UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BROOKS, HOUGHTON SECURITIES, INC., GERALD
HOUGHTON, KEVIN CENTOFANTI, AND HIROSHI YOSHIDA

                                Petitioners,

            -against-

LIFE PARTNERS HOLDINGS, INC.,

                                Respondent.
------------------------------------------------------------X

07 Civ. 6275

**AFFIDAVIT OF DANIEL J. BROWN IN SUPPORT OF PETITION TO COMPEL ARBITRATION**

STATE OF NEW YORK   )
                             :ss.
COUNTY OF NEW YORK  )

        **DANIEL J. BROWN**, being duly sworn, deposes and says:

        1.    I am an attorney associated with the law firm of Blank Rome LLP, counsel for Petitioners, Brooks, Houghton Securities, Inc., Gerald Houghton, Kevin Centofanti and Hiroshi Yoshida ("Petitioners"), and am fully familiar with the facts contained herein. I submit this affidavit in support of Petitioners' motion to (a) compel Respondent, Life Partners Holdings, Inc. ("Respondent"), to arbitrate a dispute pursuant to a March 31, 2004 Letter Agreement, which requires arbitration of any controversy or claim "arising out of or relating to" the Letter Agreement or the breach thereof, under the rules of the American Arbitration Association ("AAA")), and (b) to stay or dismiss Respondent's improper arbitration proceeding commenced on or about June 13, 2007 before the National Association of Securities Dealers Dispute Resolution, Inc. (the "NASD proceeding") because Respondent's claim unquestionably "relates to" the Letter Agreement such that it is subject to the arbitration provision therein and because the relief sought by Respondent in the NASD proceeding is identical to the relief Respondent

sought and was denied in a prior arbitration before the AAA in an award dated November 20, 2006.

2.  Because Respondent's improperly instituted NASD proceeding requires Petitioners to file an answer on or before August 2, 2007, Petitioners require this Court's intervention as soon as possible and, therefore, are proceeding by Order to Show Cause.

3.  No request for this relief has previously been made.

**Background**

4.  Attached hereto as Exhibit 1 is a true and correct copy of the Petition to Compel Arbitration dated July 9, 2007.

5.  Founded in 1991, Brooks, Houghton Securities, Inc. provides investment banking services.

6.  On or about March 31, 2004, Brooks, Houghton Securities, Inc. entered a Letter Agreement (the "Letter Agreement") with Respondent by which Respondent engaged Brooks, Houghton Securities, Inc. and its affiliates (collectively, "BHS") as its financial advisor and placement agent for the purpose of "arranging a warehouse facility of $75 million or such other form of financing as [Respondent] deems appropriate . . . ." In exchange, BHS would receive a fee equal to a percentage of any financing entered into by Respondent. A true and correct copy of the Letter Agreement is annexed hereto as Exhibit 2.

7.  The Letter Agreement also provided that Respondent would promptly refer "all inquiries, indications of interest or offers received by [Respondent] prior to [March 31, 2004] or at any time during the period of this Letter Agreement with respect to the Financing, except as agreed upon between [Respondent and BHS]."

**The Agreement to Arbitrate Any and All Disputes**
**in the American Arbitration Association**

8.  Section E of the Letter Agreement provided for the settlement of any and all disputes related to the Letter Agreement by arbitration under the rules of the American Arbitration Association (the "AAA"). Specifically, Section E provides:

> Notwithstanding anything to the contrary contained herein, any controversy or claim arising out of or relating to this Letter Agreement or the breach thereof, shall be settled by arbitration under the rules of the American Arbitration Association.

9.  Respondent also executed an indemnification agreement with "Brooks, Houghton Securities, Inc., and their affiliates . . . and any directors, officers, agents, advisors and employees of [BHS]" (the "Indemnification Agreement"). The Indemnification Agreement was explicitly incorporated into the Letter Agreement in section D: "Because [BHS] will be acting on behalf of [Respondent], [Respondent] agrees to the indemnification provision (the "Indemnification Provision") attached to this Letter Agreement as Annex A and incorporated herein in its entirety."

10. Over a period of 33 months, BHS, through Messrs. Houghton, Centofanti and Yoshida worked diligently on Respondent's behalf in an attempt to obtain a financing. As a result, BHS obtained two term sheets and a proposal letter from three very respectable companies interested in entering into a financing deal with Respondent.

11. Unbeknownst to BHS, in May 2005, Respondent retained another investment bank – FTI Capital Advisors, LLC ("FTI") – to pursue a financing for it, and the two investment banks (BHS and FTI) worked on parallel tracks. Remarkably, BHS subsequently learned that FTI and Respondent, without alerting BHS, even approached at least one of the companies from which BHS had already obtained a term sheet on Respondent's behalf. In or about January 2006, BHS became aware that Respondent entered into a $50 million financing

with Mammoth Life LLC that closed on or about December 31, 2005 (the "Mammoth Financing"). Although the Letter Agreement was still in force, Respondent deliberately concealed the Mammoth Financing from BHS.

### The October 2006 American Arbitration Association Proceeding

12. By letter dated February 17, 2006, annexed hereto as Exhibit 3, BHS contacted Respondent regarding the Mammoth Financing, indicating that Respondent's failure to refer the Mammoth Financing to BHS constituted a breach of the Letter Agreement. On or about March 1, 2006, Respondent denied any breach of the Letter Agreement. Accordingly, on or about March 21, 2006, BHS demanded an arbitration with Respondent pursuant to the arbitration provision in the Letter Agreement in respect of the aforementioned disputes. A true and correct copy of the Demand for Arbitration is annexed hereto as Exhibit 4.

13. Respondent filed no counterclaims although, as detailed below, Respondent sought reimbursement of its attorneys' fees and expenses in the AAA proceeding-- the identical relief it now seeks in the NASD proceeding.

14. By letter dated April 27, 2006, annexed hereto as Exhibit 5, the AAA provided BHS and Respondent with a list of potential arbitrators to designate. On June 26, 2006, the AAA confirmed the appointment of John Byrne, Peter Collins and John Holsinger as arbitrators, and the appointment of John Byrne as Chairman of the Panel. A true and correct copy of the AAA's June 26, 2006 letter is annexed hereto as Exhibit 6. Following a preliminary conference on July 5, 2006, the parties engaged in document discovery.

### Life Partners Holdings, Inc.'s October 16, 2006 Application for Attorneys' Fees and Costs in the AAA Proceeding

15. By letter dated October 16, 2006, Respondent asserted a claim against BHS seeking recovery of its attorneys' fees and expenses incurred in connection with the AAA

-4-

proceeding. A true and correct copy of Respondent's application for attorneys' fees and expenses is annexed hereto as Exhibit 7.

16. On October 23, 2006, BHS and Respondent, through their counsel, appeared at Blank Rome LLP's offices located in the Chrysler Building, 405 Lexington Avenue, New York, New York for a one-day evidentiary hearing before the arbitration panel. The AAA Panel heard live testimony from six witnesses, including an expert witness offered by BHS.

17. Following the evidentiary hearing, Respondent filed a post-hearing memorandum dated October 27, 2006, seeking reimbursement of costs. A true and correct copy of Respondent's post-hearing memorandum is annexed hereto as Exhibit 8.

18. In a reasoned award dated November 20, 2006 (the "Award"), annexed hereto as Exhibit 9, the Panel determined that Respondent did not breach the Letter Agreement and declined to award damages to BHS. Although the AAA panel concluded that the evidence supported Respondent, there was no finding or determination that BHS's claims or any of its arguments were frivolous or constituted bad faith.

19. The AAA panel rejected Respondent's October 16, 2006 claim for attorneys' fees and expenses, stating:

> This Award is in full and complete settlement and satisfaction of any and all claims, counterclaims . . . properly submitted to these arbitration proceedings, and any claim or counterclaim not specifically referenced herein is . . . DENIED.

20. In addition, the AAA panel further ordered that "the administrative fees of the American Arbitration Association . . . shall be borne equally by the parties as incurred; and the compensation and expenses of the Arbitrators . . . shall be borne by the parties equally."

**Respondent's Refusal to Arbitrate in the Proper Forum – the American Arbitration Association**

21. On June 19, 2007, Petitioners received notice that Respondent commenced the NASD proceeding. In the NASD proceeding, Respondent seeks recovery for its attorneys' fees and costs incurred in connection with the AAA arbitration. A true and correct copy of Respondent's NASD Complaint is annexed hereto as Exhibit 10.

22. Unless the NASD proceeding is dismissed or stayed, Petitioners must file an answer on or before August 2, 2007.

23. Respondent's prayer for relief in the NASD proceeding seeks "legal fees, arbitration costs and travel expenses" totaling $177,129.53, which is the precise relief Respondent sought and was denied in the prior AAA proceeding.

## CONCLUSION

24. For all of the foregoing reasons and for the reasons stated in the accompanying memorandum of law, this Court should grant Petitioners' application in its entirety and enter an order: (i) compelling Respondent to arbitrate its claims against Petitioners in the American Arbitration Association in accordance with the arbitration provision of the Letter Agreement; and (ii) dismissing or staying the NASD proceeding.

DANIEL J. BROWN

Sworn to before me this
10th day of July, 2007

Notary Public

INBAL PAZ
Notary Public, State of New York
Reg. # 03PA6140801
Qualified in New York County
My Commission Expires 01/30/2010