# EXHIBIT 4

Case 1:07-cv-06275-BSJ   Document 4-5   Filed 07/16/2007   Page 1 of 8

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

X - C
f Readues

## COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Respondent: Life Partners Holdings, Inc. Attention: R. Scott Peden, Esq. (Secretary/General Counsel) | Name of Representative (if known) |
|---|---|
| Address: 204 Woodhew | Name of Firm (if applicable) |
| | Representative's Address |

| City: Waco | State: Texas | Zip Code: 76712 | City: | State: | Zip Code: |
|---|---|---|---|---|---|
| Phone No. 800-368-5569 | Fax No. 254-741-6017 | | Phone No. | | Fax No. |
| Email Address: | | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated March 31, 2004, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**
This is a claim for breach of a contract between Claimant and Respondent dated March 31, 2004, pursuant to which Claimant provided financial advisor and placement agent services to Respondent with regard to obtaining financing.

| Dollar Amount of Claim $ In excess of $1 million | Other Relief Sought: ☐ Attorneys Fees ☒ Interest ☒ Arbitration Costs ☐ Punitive/Exemplary ☐ Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $8,000

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE: The arbitrator(s) should be knowledgeable regarding financial placement services provided by private investment banking firms to publicly traded companies.

| Hearing locale New York, New York (check one) | ☒ Requested by Claimant | ☐ Locale provision included in the contract |
|---|---|---|
| Estimated time needed for hearings overall: 1-2 days | Type of Business: Claimant: Private Investment Banking Firm Respondent: Life Settlement Company | |

Is this a dispute between a business and a consumer? ☐ Yes ☒ No   Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐ Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA ☐ Dallas, TX ☐ East Providence, RI ☐ Fresno, CA ☒ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)  Date: 3/21/06 | Name of Representative: Kenneth L. Bressler, Esq. Daniel J. Brown, Esq. |
|---|---|
| Name of Claimant: Brooks, Houghton & Company, Inc. | Name of Firm (if applicable): Blank Rome LLP |
| Address (to be used in connection with this case) 444 Madison Avenue, 25th Floor | Representative's Address: 405 Lexington Avenue |

| City New York | State New York | Zip Code 10022 | City New York | State New York | Zip Code 10174 |
|---|---|---|---|---|---|
| Phone No. (212) 753-1991 | Fax No. (212) 753-7730 | | Phone No. (212) 885-5000 | | Fax No. (212) 885-5002 |
| Email Address: | | | Email Address: kbressler@blankrome.com dbrown@blankrome.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

121529.00601/6455563v.1

# BROOKS, HOUGHTON & COMPANY, INC.
444 Madison Avenue • 25th Floor • New York, NY 10022 • Telephone: 212-753-1991 • Facsimile: 212-753-7730

March 31, 2004

Mr. Brian D. Pardo, CEO
Life Partners Holdings, Inc.
204 Woodhew
Waco, TX 76712

Re: Letter Agreement for Financial Advisor, Investment Banker & Placement Agent

Dear Mr. Pardo:

This letter agreement (the "Letter Agreement") will confirm the engagement of Brooks, Houghton Securities, Inc., and their affiliates (collectively, the "Advisor"), on behalf of Life Partners Holdings, Inc. (collectively, "Life Partners" or the "Company") to act on a non-exclusive basis as financial advisor and placement agent (the "Engagement") in primarily arranging a warehouse facility of $75 million or such other form of financing as the Company deems appropriate (the "Financing") for the purpose of acquiring a pool of senior life settlements that will be used as the underlying assets of securitized offerings that the Company may undertake in the future. For the purpose of this Letter Agreement, the term "Financing" refers to any Financing whether affected in one transaction or in a series of transactions. It is understood that Life Partners has the complete and unabridged right to accept or reject any Financing arranged by the Advisor on behalf of Life Partners, without penalty or consequence.

A. **Responsibilities and Services**

The Advisor shall perform the following specific services, on a best efforts basis as requested by and at the direction of the Company:

(i) reviewing and analyzing the Company's historical operations, business plans and projections;
(ii) providing advice on possible terms, form and structure of the Financing, which may include recommendations on valuation;
(iii) assisting in the preparation of information to be provided to potential investors;
(iv) soliciting interest in the Financing among institutional, strategic and other accredited investors; and
(v) assisting in the closing the Financing.

The Company agrees that all inquiries, indications of interest or offers received by the Company prior to this date or at any time during the period of this Letter Agreement with respect to the Financing, except as agreed upon between the Company and the Advisor for excluded partners or investors, shall be referred promptly to the Advisor and therefore shall be considered applicable to this Letter Agreement during the period of the Advisor's engagement pursuant to this Letter Agreement.

Ex. A

Date: March 5, 2004
Page: 2
Re: BHC-Life Partners Ltr Agreement

### B. Compensation to the Advisor

1. Placement Fee

   Upon the placement of the warehouse facility, the Advisor will be paid a placement fee of 3.0% of the total value of the placement. For purposes of this paragraph, "total value of the placement" shall mean the total facility amount received by the Company from the facility provider in such Financing.

   Upon the placement of all forms of equity by groups introduced by Advisor, including shares of preferred stock, the Advisor will be paid a Placement Fee of 6.0% of the total value of the placement.

   Upon placement of subordinated term or convertible debt, the Advisor will be paid a Placement Fee of 5% of the total value of the placement.

   The Advisor will be paid all Placement Fees at the closing of a Financing. Additionally, the Advisor will be paid in full at closing all Placement Fees based on the face value of the warehouse facility.

2. Expenses

   Subject to the company's prior approval, Company agrees to reimburse Advisor promptly.

### C. Terms of Engagement

The term of the Agent's Engagement hereunder shall extend for six months commencing with the signing of the Letter Agreement and will be extended automatically unless the parties mutually agree otherwise, with all fee and indemnification provisions remaining operative after the termination of this Letter Agreement. In addition, to the extent that earnest and on-going discussions and/or negotiations with identified parties regarding the Financing are continuing (a listing of such parties to be provided by the Advisor at the end of the Engagement Period), the Letter Agreement will automatically be extended until Life Partners notifies the Advisor upon 30 days written notice that such discussions and/or negotiations have been terminated. Effective as of the date of this Letter Agreement and until the expiration of a period of 18 months from the date of the expiration or termination of this Letter Agreement, the Advisor will be paid all fees outlined above should Life Partners consummate a Financing offered by any party (1) introduced to Life Partners by the Advisor or with which Life Partners or the Advisor on behalf of the Company has held discussions during the period of the Advisor's Engagement pursuant to this Letter Agreement and (2) which was identified by the Advisor on a list limited to parties described in clause 1 above and delivered to the Company at the time of termination or expiration of this Letter Agreement.

Case 1:07-cv-06275-BSJ   Document 4-5   Filed 07/16/2007   Page 5 of 8

01-05-06 09:05                          ID=                          

Date: March 5, 2004
Page: 3
Re: BHC-Life Partners Ltr Agreement

### D. Indemnification Provision

Because the Advisor will be acting on behalf of Life Partners, the Company agrees to the indemnification provision (the "Indemnification Provision") attached to this Letter Agreement as Annex A and incorporated herein in its entirety.

### E. Arbitration

Notwithstanding anything to the contrary contained herein, any controversy or claim arising out of or relating to this Letter Agreement or the breach thereof, shall be settled by arbitration under the rules of the American Arbitration Association.

### F. Additional Terms

Notwithstanding anything to the contrary contained herein, the provisions concerning confidentiality, indemnification, contribution and the obligation to pay fees and reimburse expenses contained herein and in the Indemnification Provision shall survive any expiration or termination of the Letter Agreement or the engagement of the Advisor pursuant to the terms of the Letter Agreement.

During the term of the Letter Agreement, the Company will apprise the Advisor in a timely manner of material matters relevant to the Company's business and financial condition. For 12 months following the expiration or termination of the Letter Agreement, the Company will notify the Advisor of any Financing with any person or entity on the list provided by Advisor to the Company pursuant to paragraph C of this Letter Agreement at least one week before the closing of such Financing whenever practicable and promptly whenever not so practicable.

The Company represents and warrants that to the best of its knowledge no information which it furnishes to the Advisor, including the Company's financial statements, contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein, in light of the circumstances under which they were made, not misleading, and all forecasts are and will be based on reasonable assumptions. Life Partners acknowledges that the Advisor (i) will be using and relying on information available from Life Partners and generally recognized public sources (the "Information") without having independently verified the same; and (ii) does not assume responsibility for the accuracy or completeness of the Information.

The Advisor agrees that any information supplied by and created in conjunction with the Company will be considered property of the Company and that any summaries or analyses by the Advisor of any of such information created by the Advisor including, but not limited to, financial and valuation models needed for analysis of the Transactions shall be considered confidential information of the Company and shall be treated as such under this paragraph. The Advisor agrees to keep any information with respect to Life Partners and this Letter Agreement (including the summaries and analyses described above) confidential and shall not disclose or make use thereof except in connection with services hereunder for the Company, unless disclosure is required by applicable law or judicial process (and then only after prior written notice to the Company), any

Date:   March 5, 2004
Page:   4
Re:     BHC-Life Partners Ltr Agreement

information is or becomes generally available to the public, or any information was or becomes available to the Advisor on a non-confidential basis from a source other than the Company or its representatives. No party to this Letter Agreement will be identified or referred to in any release or communication prepared by any other party to this Letter Agreement or any of its affiliates or associates without the first party's prior written consent.

This Letter Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, supersedes all prior agreements, may not be amended or modified except in writing executed by Life Partners and the Advisor, and shall be governed by and construed in accordance with the laws of the State of New York. This Letter Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Please confirm that the foregoing is in accordance with your understanding by signing and returning to the Advisor the enclosed duplicate of this Letter Agreement.

Sincerely,

Brooks, Houghton Securities, Inc.

By: _____
    Gerald Houghton
    President

Accepted and Agreed:

Life Partners Holdings, Inc.

By: _____
    Brian D. Pardo, CEO

Date:   March 5, 2004
Page:   5
Re:     BHC-Life Partners Ltr Agreement

### Annex A

### Indemnification Agreement

Life Partners Holdings ("Life Partners" or the "Company") hereby agrees to indemnify and hold harmless Brooks, Houghton Securities, Inc., and their affiliates (collectively, the "Advisor") and any directors, officers, agents, advisors and employees of the Advisor (all of the foregoing being referred to herein individually as "Indemnified Party" or collectively as "Indemnified Parties") from and against any losses, claims, damages or liabilities, joint or several (or actions in respect thereof), to which such Indemnified Party may become subject related to or arising out of (i) any Company transaction under the Agreement to which this is annexed or the Engagement of the Advisor under the Agreement to which this in annexed or (ii) any Indemnified Party's activities in connection therewith, and will reimburse each Indemnified Party for all expenses (including counsel fees and expenses) as they are incurred by each Indemnified Party in connection with investigating, preparing or defending any such action or claim, whether or not in connection with pending or threatened litigation in which such Indemnified Party is a party. The Company will not, however, be responsible under the foregoing indemnification for any losses, claims, damages, liabilities or expenses to the extent that it is finally judicially determined that the losses, claims, damages, liabilities or expenses resulted primarily from the Agent or any Indemnified Party's willful malfeasance, fraud or gross negligence. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's shareholders for or in connection with such Engagement except for any such liability for losses, claims, damages, liabilities or expenses incurred by the Company or the Company's shareholders to the extent that it is finally judicially determined that the losses, claims, damages, liabilities or expenses resulted primarily from the Agent's or any Indemnified Party's willful malfeasance, fraud or gross negligence.

The Advisor shall give the Company written notice of any claim of which the Advisor has actual notice giving rise to a potential indemnity claim hereunder, and the Company shall have the right at its sole cost and expense to defend, settle or compromise the claim. The Advisor shall provide reasonable cooperation with respect thereto at all times.

The Company and the Indemnified Parties agree that if any indemnification or reimbursement sought pursuant to the first paragraph is finally determined to be unavailable (except with respect to indemnification for the reasons specified in the first paragraph), then (whether or not any Indemnified Party is the person entitled to indemnification or reimbursement) the Company and the Indemnified Parties shall contribute to the losses, claims, liabilities, damages and expenses for which such indemnification or reimbursement is held unavailable in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and the Indemnified Parties on the other, in connection with the transaction contemplated herein, subject to the limitation that in any event the Indemnified Parties' aggregate contribution to all losses, claims, liabilities, damages and expenses with respect to which contribution is available hereunder shall not exceed the amount of fees actually received by the Indemnified Parties hereunder. It is hereby agreed that the relative benefits to the Company, on the one hand, and the Indemnified Parties, on the other, with respect to any transaction or proposed transaction contemplated herein shall be deemed to be in the same proportion as (i) the total value of the transaction contemplated herein bears to (ii) the fees paid to the Indemnified Parties with respect to such transaction.

Date:   March 5, 2004
Page:   6
Re:     BHC-Life Partners Ltr Agreement

The rights accorded to Indemnified Parties hereunder shall be in addition to any rights that any Indemnified Party may have at common law, by separate agreement or otherwise.

This Agreement shall be governed by and construed in accordance with the laws of the state of New York applicable to agreements made and to be performed entirely in such state. Without admitting or acquiescing to personal jurisdiction or doing business in the state of New York, the Company hereby consents, solely for the purpose of allowing an indemnified party to enforce its rights hereunder, to personal jurisdiction and service and venue in any court in which any claim for which indemnification may be sought hereunder is brought against the Advisor or any other indemnified party.

This Agreement may not be amended or otherwise modified except by an instrument signed by both the Advisor and the Company. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision of this Letter Agreement, which shall remain in full force and effect. If there is more than one indemnitor hereunder, each indemnifying person agrees that its liabilities hereunder shall be joint and several.

The foregoing indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of any Indemnified Party and shall survive the completion or any termination of the services contemplated in the Agreement to which this is annexed, and shall survive any termination of the Agreement to which this is annexed, until the expiration of any and all applicable statutes of limitation.

Sincerely,

Life Partners Holdings, Inc.

By: _____
    Brian D. Pardo, CEO

Acknowledged and Agreed to:

Brooks, Houghton Securities, Inc.

By: _____
    Gerald Houghton
    President