# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

    The March 31, 2004 Letter Agreement.................................................................................2

    The Agreement to Arbitrate Any and All Disputes in the American Arbitration
    Association.............................................................................................................................3

    The October 2006 American Arbitration Association Proceeding .......................................4

    Life Partners Holdings, Inc.'s October 16, 2006 Claim for Reimbursement of
    Attorneys' Fees and Expenses in the AAA Proceeding..........................................5

    Respondent's Claims in the NASD Proceeding Are Directly Related to the March
    31, 2004 Letter Agreement and Seeks Identical Relief Which Was Denied
    by the AAA Panel ......................................................................................................6

    The Individual Petitioners Acted As Agents of BHS and Respondent's NASD
    Complaint States No Basis for Individual Liability.................................................6

ARGUMENT..................................................................................................................................7

I.    Respondent Must Be Compelled to Arbitrate Its Claims In the American
    Arbitration Association Pursuant to Section E of the March 31, 2004
    Letter Agreement ...................................................................................................7

    A.    Respondent's Dispute Before the NASD is Subject to Arbitration
    Under Section E of the Letter Agreement....................................................7

    B.    Respondent Cannot Circumvent Section E of the Letter Agreement
    By Changing the Labels on its Claims..........................................................8

    C.    An Order Compelling Arbitration of Respondent's Claims in the
    American Arbitration Association Will Prevent the Possibility of
    Inconsistent Results and Discourage Forum Shopping ...............................9

    D.    The Individual Petitioners Are Protected Non-Signatories of the
    Letter Agreement and May Compel Arbitration in the American
    Arbitration Association..............................................................................11

**TABLE OF CONTENTS**
(continued)

Page

i.   The Individual Petitioners Are Protected Non-Signatories
     Because They Are Agents of BHS..................................................11

ii.  Respondent Is Estopped from Claiming that the Individual
     Petitioners Cannot Compel Arbitration Under the Letter
     Agreement.........................................................................................12

II.  This Court Can and Should Dismiss or Stay Respondent's Attempt to
     Circumvent the Arbitration Provision in the Letter Agreement .............................13

CONCLUSION.................................................................................................................15

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

AMF Inc. v. Brunswick Corp., 621 F. Supp. 456 (S.D.N.Y. 1985) ....................................7

Chleck v. General Electric Co., 287 F. Supp. 2d 457 (S.D.N.Y. 2003) ..............................8

Federated Dep't Stores v. Moitie, 452 U.S. 394 (1981)......................................................10

Genesco, Inc. v. T. Kakiuchi & Co. Ltd., 815 F.2d 840 (2d Cir. 1987) ..............................8

Jacobson v. Fireman's Ins. Fund, 111 F.3d 261 (2d Cir. 1997) ..........................................10

L.F. Rothschild & Co. v. Katz, 702 F. Supp. 464 (S.D.N.Y. 1988) ...................................14

Letizia v. Prudential Bache Sec., 802 F.2d 1185 (9th Cir. 1986) ......................................11

Moses H. Cone Memorial Hospital, 460 U.S. 1 (1983).......................................................7

New York Cross Harbor Railroad v. Consolidated Rail Corp., 72 F. Supp. 2d 70
(E.D.N.Y. 1998).................................................................................................................8

Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 (3d Cir. 1993).........11, 12

Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993), cert. denied, 510 U.S.
945..............................................................................................................................11, 12

S.A. Mineracao da Trinidade-Samitri v. Utah International, Inc., 745 F. Supp. 190
(2d Cir. 1984).....................................................................................................................7

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987)................................7

Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, 198 F.3d
88 (2d Cir. 1999)...............................................................................................................13

Societe Generale de Surveillance, S.A. v. Raytheon European Management and
Systems Co., 643 F.2d 863 (1st Cir. 1981)....................................................................14

Supermarkets General Corp. v. Local 919, 645 F. Supp. 831 (D. Conn. 1986)..................9

Talegen Holdings, Inc. v. Fremont General Corp., 1998 WL 513066 (S.D.N.Y.
Aug. 19, 1998) ...................................................................................................................9

**TABLE OF AUTHORITIES**

(continued)

Page

**STATE CASES**

Hirschfeld Productions, Inc. v. Mirvish, 88 N.Y.2d 1054 (N.Y. 1996)..............................11

Protocom Devices, Inc. v. Figueroa, 144 Misc. 2d 738, 545 N.Y.S.2d 527 (N.Y.
    Sup. Ct. 1989), aff'd, 173 A.D.2d 177, 569 N.Y.S.2d 80 (1st Dep't 1991) .................10

**FEDERAL STATUTES**

9 U.S.C. § 1 *et seq*...................................................................................................................7

9 U.S.C. § 2 ............................................................................................................................7

9 U.S.C. § 4 ...........................................................................................................................14

## PRELIMINARY STATEMENT

Petitioners, Brooks, Houghton Securities, Inc., Gerald Houghton, Kevin Centofanti and Hiroshi Yoshida (collectively, the "Petitioners") require this Court's intervention to compel Respondent Life Partners Holdings, Inc. ("Respondent") to arbitrate its disputes against Petitioners in the American Arbitration Association ("AAA") because the parties' March 31, 2004 Letter Agreement, pursuant to which Petitioners provided investment banking services to Respondent, mandates that any and all disputes "arising out of" or "related to" the Letter Agreement must be resolved under the rules of the AAA.

Notwithstanding a full evidentiary hearing and award issued by the AAA in a prior arbitration, Respondent now seeks a second bite at the apple by demanding arbitration in the National Association of Securities Dispute Resolution, Inc. (the "NASD" or "NASD proceeding") against Petitioners, seeking reimbursement of Respondent's attorneys' fees and expenses incurred in the prior AAA proceeding which Respondent previously sought and was denied by the AAA Panel. As detailed herein, Respondent's claims in the NASD proceeding, alleging that the prior arbitration was brought in bad faith, unquestionably fall within the ambit of the Letter Agreement's broadly worded arbitration provision and must be decided in the AAA, not the NASD. In addition to compelling arbitration of Respondent's claims in the AAA, this Court should enter an order dismissing or staying the improperly instituted NASD proceeding.

Respondent also should be compelled to arbitrate in the AAA because the relief Respondent seeks in the NASD—reimbursement of attorneys' fees and expenses—is identical to the relief which Respondent sought and was denied following a full evidentiary hearing conducted by a three-member AAA Panel. Importantly, Respondent opted not to seek vacatur of the Award and, therefore, is barred by the doctrine of res judicata from re-litigating any claims

which were raised or could have been raised in the prior AAA proceeding. In short, this Court should not countenance Respondent's blatant attempt at forum shopping.

Nor can Respondent evade the Letter Agreement's arbitration provision by dressing up its claims in the NASD as ones for a "breach of fiduciary duty" and "bad faith". The law is clear that disputes must be arbitrated in accordance with the parties' agreement if the facts touch upon matters covered by an arbitration agreement, irrespective of the legal theories attached to them. Here, the parties' agreement provides for arbitration in the AAA, not the NASD.

Similarly, Respondent cannot circumvent the Letter Agreement's arbitration provision by naming non-signatories, Messrs. Houghton, Centofanti and Yoshida as respondents in the NASD proceeding because (i) they acted as agents of BHS and are therefore entitled to compel arbitration against Respondent as a matter of law; and (ii) Respondent is estopped from claiming they cannot compel arbitration because the issues in the NASD proceeding are intertwined with the Letter Agreement (and the prior Award).

For all of these reasons, Petitioners' motion to compel arbitration should be granted in its entirety. Additionally, this Court should exercise its power to enter an order dismissing or staying the improperly instituted NASD proceeding which requires Petitioners to submit an answer on or before August 2, 2007.

## STATEMENT OF FACTS

### The March 31, 2004 Letter Agreement

On or about March 31, 2004, Brooks, Houghton Securities, Inc. entered a Letter Agreement (the "Letter Agreement") with Respondent by which Respondent engaged Brooks, Houghton Securities, Inc. and its affiliates (collectively, "BHS") as its financial advisor and placement agent for the purpose of "arranging a warehouse facility of $75 million or such other form of financing as [Respondent] deems appropriate . . . ." Affidavit of Daniel J. Brown, sworn

-2-

to on July 10, 2007 (the "Brown Aff.") at Ex. 2. In exchange, BHS would receive a fee equal to

a percentage of any financing entered into by Respondent.

The Letter Agreement also provided that Respondent would promptly refer "all inquiries,

indications of interest or offers received by [Respondent ] prior to [March 31, 2004] or at any

time during the period of this Letter Agreement with respect to the Financing, except as agreed

upon between [Respondent and BHS]." Id.

## The Agreement to Arbitrate Any and All Disputes in the American Arbitration Association

Section E of the Letter Agreement provided for the settlement of any and all disputes

related to the Letter Agreement by arbitration under the rules of the American Arbitration

Association (the "AAA"). Specifically, Section E provides:

> Notwithstanding anything to the contrary contained herein, any
> controversy or claim arising out of or relating to this Letter
> Agreement or the breach thereof, shall be settled by arbitration
> under the rules of the American Arbitration Association.

Id.

Respondent also executed an indemnification agreement with "Brooks, Houghton

Securities, Inc., and their affiliates . . . and any directors, officers, agents, advisors and

employees of [BHS]" (the "Indemnification Agreement"). The Indemnification Agreement was

explicitly incorporated into the Letter Agreement in section D: "Because [BHS] will be acting

on behalf of [Respondent], [Respondent] agrees to the indemnification provision (the

"Indemnification Provision") attached to this Letter Agreement as Annex A and incorporated

herein in its entirety. Id.

Over a period of 33 months, BHS, through Messrs. Houghton, Centofanti and Yoshida

(the "Individual Petitioners") worked diligently on Respondent's behalf in an attempt to obtain a

financing. As a result, BHS obtained two term sheets and a proposal letter from three very

-3-

respectable companies interested in entering into a financing deal with Respondent. See Brown
Aff. at ¶ 10.

Unbeknownst to BHS, in May 2005, Respondent retained another investment bank – FTI
Capital Advisors, LLC ("FTI") – to pursue a financing for it, and the two investment banks
(BHS and FTI) worked on parallel tracks. See id. at ¶ 12. Remarkably, BHS subsequently
learned that FTI and Respondent, without alerting BHS, even approached at least one of the
companies from which BHS had already obtained a term sheet on Respondent's behalf. In or
about January 2006, BHS became aware that Respondent entered into a $50 million financing
with Mammoth Life LLC that closed on or about December 31, 2005 (the "Mammoth
Financing"). Although the Letter Agreement was still in force, Respondent deliberately
concealed the Mammoth Financing from BHS. See id.

## The October 2006 American Arbitration Association Proceeding

By letter dated February 17, 2006, BHS contacted Respondent regarding the Mammoth
Financing, indicating that Respondent's failure to refer the Mammoth Financing to BHS
constituted a breach of the Letter Agreement. See id. at Ex. 3. On or about March 1, 2006,
Respondent denied any breach of the Letter Agreement. Accordingly, on or about March 21,
2006, BHS demanded an arbitration with Respondent pursuant to the arbitration provision in the
Letter Agreement in respect of the aforementioned disputes. See id. at Ex. 4. BHS sought
payment of investment banking fees as well as its attorneys' fees and costs. Respondent filed no
counterclaims although, as detailed below, Respondent claimed for reimbursement of its
attorneys' fees and expenses in the AAA proceeding, the identical relief it now seeks in the
NASD proceeding.

-4-

By letter dated April 27, 2006, the AAA provided BHS and Respondent with a list of

potential arbitrators to designate. See id. at Ex. 5. One June 26, 2006, the AAA confirmed the

appointment of John Byrne, Peter Collins and John Holsinger as arbitrators, and the appointment

of John Byrne as Chairman of the Panel. See id. at Ex. 6. Following a preliminary conference

on July 5, 2006, the parties engaged in document discovery.

## Life Partners Holdings, Inc.'s October 16, 2006 Claim for
## Reimbursement of Attorneys' Fees and Expenses in the AAA Proceeding

By letter dated October 16, 2006, Respondent asserted a claim against BHS seeking

recovery of its attorneys' fees and expenses incurred in connection with the AAA proceeding.

See Brown Aff. at Ex. 7.[1]

On October 23, 2006, BHS and Respondent, through their counsel, appeared at Blank

Rome LLP's offices located in the Chrysler Building, 405 Lexington Avenue, New York, New

York for a one-day evidentiary hearing before the arbitration panel. See Brown Aff. at ¶ 16.

The AAA Panel heard live testimony from six witnesses, including an expert witness offered by

BHS. In a reasoned award dated November 20, 2006 (the "Award"), the Panel determined that

Respondent did not breach the Letter Agreement and declined to award damages to BHS. See id.

at Ex. 9. Although the AAA panel concluded that the evidence supported Respondent, there was

no finding or determination that BHS's claims or any of its arguments were frivolous or

constituted bad faith.

Importantly, the AAA panel rejected Respondent's October 16, 2006 claim for attorneys'

fees and expenses, stating:

> This Award is in full and complete settlement and satisfaction of
> any and all claims, counterclaims . . . properly submitted to these

---

[1]  Respondent's post-hearing memorandum dated October 27, 2007 also sought reimbursement of Respondent's
costs incurred in the AAA proceeding. See Brown Aff. at Ex. 8.

> arbitration proceedings, and any claim or counterclaim not
> specifically referenced herein is . . . DENIED.

In addition, the AAA panel further ordered that "the administrative fees of the American

Arbitration Association . . . shall be borne equally by the parties as incurred; and the

compensation and expenses of the Arbitrators . . . shall be borne by the parties equally."

## Respondent's Claims in the NASD Proceeding Are Directly Related to the March 31, 2004 Letter Agreement and Seeks Identical Relief Which Was Denied by the AAA Panel

On June 19, 2007, Petitioners received notice of the NASD proceeding. See Brown Aff.

at ¶ 21. Respondent attempts to distinguish its NASD proceeding from the prior AAA

proceeding by claiming that its complaint against BHS and the Individual Petitioners is for "bad

faith and breach of fiduciary duty in pursuing the [AAA] arbitration action in the first place

because it had no basis in fact." Remarkably, Respondent fails to disclose that the relief it now

seeks in the NASD, "the legal fees, arbitration costs and travel expenses [from the AAA

proceeding]" was denied in the AAA proceeding.[2]

## The Individual Petitioners Acted As Agents of BHS and Respondent's NASD Complaint States No Basis for Individual Liability

Respondent's NASD complaint particularizes no basis for individual liability against

Messrs. Houghton, Centofanti and Yoshida (the "Individual Petitioners"). To the contrary, the

complaint merely lumps the Individual Petitioners together with BHS and acknowledges that

their alleged conduct was undertaken exclusively in their capacities as agents of BHS and in the

context of the Letter Agreement (i.e., BHS's decision to exercise its right to demand an

arbitration against Respondent in the AAA pursuant to Section E of the Letter Agreement).

---

[2]   Respondent's prayer for relief in the NASD proceeding also seeks an award of "punitive and exemplary damages." Brown Aff. at Ex. 10. Respondent's claim for punitive damages, which is wholly lacking in merit, is predicated upon its claim for recovery of attorneys' fees and expenses incurred in the AAA proceeding which has already been denied. Even putting this aside, Respondent's claim for punitive damages still "relates to" the Letter Agreement and must be resolved by arbitration under the rules of the AAA, not the NASD. See infra.

## ARGUMENT

I.  **Respondent Must Be Compelled to Arbitrate Its Claims In the American Arbitration Association Pursuant to Section E of the March 31, 2004 Letter Agreement**

   A.  **Respondent's Dispute Before the NASD is Subject to Arbitration Under Section E of the Letter Agreement.**

Section 2 of the Federal Arbitration Act (the "FAA") mandates that written arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The concept of arbitration embraces all forms of contractual dispute resolution. See AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (S.D.N.Y. 1985) ("Contemporary cases provide a broad description of arbitration: '[a] form of procedure whereby differences may be settled.'") (citations omitted). Moreover, it is fundamental that arbitration is a creature of contract, and arbitrations must therefore be enforced according to their terms. See 9 U.S.C. § 1 *et seq.*; Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-226 (1987) (the FAA "plac[es] arbitration agreements on the same footing as other contracts") (citations and internal quotations omitted).

It is well settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." Moses H. Cone Memorial Hospital, 460 U.S. 1, 24-25 (1983). And, "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." S.A. Mineracao da Trinidade-Samitri v. Utah International, Inc., 745 F. Supp. 190, 194 (2d Cir. 1984).

In determining whether a specific issue is covered by an arbitration clause, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims touch matters covered by the parties' [agreement], then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T.

-7-

Kakiuchi & Co. Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (compelling arbitration of fraudulent

inducement and RICO claims as required by the phrase "relating to" in an arbitration clause); see

also New York Cross Harbor Railroad v. Consolidated Rail Corp., 72 F. Supp. 2d 70 (E.D.N.Y.

1998) (compelling arbitration of breach of fiduciary duty and bad faith where factual allegations

touched upon the parties' agreement).

Here, the parties' broadly worded arbitration provision unquestionably encompasses

Respondent's NASD claims for "breach of fiduciary duty and bad faith," which directly relate to

the Letter Agreement and, as Respondent concedes, BHS's decision to pursue the AAA

proceeding. Indeed, all of the factual allegations underpinning Respondent's claims in the

NASD proceeding (i.e., BHS's demand for payment of investment banking fees and its decision

to proceed with an arbitration against Respondent in the AAA, notwithstanding certain defenses

raised by Respondent) were factual issues considered by the AAA Panel and, therefore, "touch

upon" matters in the Letter Agreement. In short, the claims asserted by Respondent in the

NASD proceeding fall squarely within the ambit of the arbitration provision in the Letter

Agreement and should be decided in accordance with the rules of the parties' agreed-upon

forum--the American Arbitration Association--not the NASD.

## B.    Respondent Cannot Circumvent Section E of
the Letter Agreement By Changing the Labels on its Claims

Respondent cannot circumvent the arbitration provision under the Letter Agreement and,

in effect, obtain a second bite at the apple simply by dressing up its request for relief under

alternate legal theories particularly where, as here, Respondent sought and was denied the

identical relief before the AAA Panel. See Chleck v. General Electric Co., 287 F. Supp. 2d 457,

460 (S.D.N.Y. 2003) ("Under the Agreement, the parties expressly agreed to submit all disputes

[to arbitration] and plaintiffs cannot escape this term simply by alleging that defendant breached

-8-

the contract in bad faith"); see also Talegen Holdings, Inc. v. Fremont General Corp., 1998 WL

513066, at *4 (S.D.N.Y. Aug. 19, 1998) (compelling arbitration of breach of contract claims:

"Plaintiff's claims are . . . arbitrable, notwithstanding . . .efforts to characterize the claims in such

a way as to appear that they are beyond the scope of the arbitration agreement").

As discussed above, there is no question that the parties' broadly worded arbitration

provision in the Letter Agreement, applying "to any controversy or claim arising out of or

relating to this Letter Agreement or the breach thereof," encompasses the disputes raised in the

NASD proceeding irrespective of Respondent's decision to style the claims as "bad faith and

breach of fiduciary duty". See Talegen Holdings, Inc., 1998 WL 513066 at *4.

## C. An Order Compelling Arbitration of Respondent's Claims in the American Arbitration Association Will Prevent the Possibility of Inconsistent Results and Discourage Forum Shopping

Respondent's attempt to obtain relief in a second forum (i.e., the NASD) also runs afoul

of the well settled policies favoring a single arbitration to resolve all disputes between parties

which have consented to a broad arbitration provision and discouraging forum shopping. In

Supermarkets General Corp. v. Local 919, 645 F. Supp. 831, 833 (D. Conn. 1986), the District

Court upheld a stay precluding arbitration of an employment dispute before a State Grievance

Board where the parties had previously participated in an American Arbitration Association

proceeding on a related issue. Specifically, the District Court stated:

> It has been previously held that respondent's efforts to seek dual arbitration contravenes all intention of the parties expressed in the agreement. No provision of the agreement even remotely indicates an intent to submit issues to dual arbitration . . . There is likewise no policy favoring arbitration-shopping.

* * *

> Arbitration is a matter of contract and hence subject to judicial determination . . . [A]rbitration is a cost effect alternative to

-9-

> expensive and time consuming litigation. To allow dual arbitration
> would undermine this basic policy.

See id. (emphasis supplied).

Respondent should not be given the opportunity to engage in "arbitration-shopping",

which would fly in the face of the basic policies underlying arbitration. Moreover, all of the

alleged facts giving rise to Respondent's NASD claim for "breach of fiduciary duty and bad

faith" could have been pled by Respondent in a counterclaim in the AAA proceeding.

Respondent chose not to do so. Nor did Respondent ever seek to vacate the Award.

Separately, an order compelling arbitration in the AAA will preclude the possibility of

inconsistent results between the two arbitration forums. The record demonstrates unequivocally

that the AAA denied the relief Respondent now seeks in the NASD. See Brown Aff. at Ex. 9.

There is simply no legal basis upon which Respondent can seek to have the NASD re-consider

the AAA Panel's denial of such relief. [3]

For all of these reasons, Respondent must be compelled to arbitrate its claims in the

AAA.

---

[3]  Because Respondent was given a full and fair opportunity to present its claims for relief before the AAA Panel and because Respondent failed to obtain vacatur of the Award which denied its claim for reimbursement of attorneys' fees and expenses, the AAA Award constitutes res judicata. See Jacobson v. Fireman's Ins. Fund, 111 F.3d 261, 265 (2d Cir. 1997) (holding that the doctrine of res judicata is not limited to prior court proceedings and applies to final arbitration awards). See also Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981) (holding that the doctrine of res judicata applies not only to claims actually decided in prior action, but also those claims that "were or could have been raised in the prior action."). Moreover, a final arbitration award is res judicata even if it has not been judicially confirmed. See Protocom Devices, Inc. v. Figueroa, 144 Misc. 2d 738, 545 N.Y.S.2d 527, 528 (N.Y. Sup. Ct. 1989), aff'd, 173 A.D.2d 177, 569 N.Y.S.2d 80 (1st Dep't 1991). See also Jacobson, 111 F.3d at 267-68.

**D.**   **The Individual Petitioners Are Protected Non-Signatories of the Letter Agreement and May Compel Arbitration in the American Arbitration Association**

The Individual Petitioners can compel arbitration in the AAA under the Letter Agreement because (i) they are agents and employees of signatory, BHS; and (ii) Respondent is estopped from claiming that the Individual Petitioners are non-signatories.

**i.**   **The Individual Petitioners Are Protected Non-Signatories Because They Are Agents of BHS**

The Second Circuit and other federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals where, as here, the alleged misconduct relates to their conduct as officers, directors or agents of the signatory corporation. See Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993), cert. denied, 510 U.S. 945; Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121 (3d Cir. 1993); Letizia v. Prudential Bache Sec., 802 F.2d 1185 (9th Cir. 1986). In Roby, the Second Circuit held that the extension of arbitration agreements to agents is necessary to prevent circumvention of arbitration agreements by simply naming individual defendants. See Roby, 996 F.2d at 1360. By ensuring that the parties do not circumvent the arbitration agreement, the rule also "effectuate[s] the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement." Hirschfeld Productions, Inc. v. Mirvish, 88 N.Y.2d 1054, 1056 (N.Y. 1996).[4]

In Hirschfeld Productions, Inc., the New York Court of Appeals applied the holding in Roby in an illustrative case involving the aftermath of a failed joint venture. There, a theater producer sued officers of a co-venturer rather than the co-venturing entity itself, with which the

---

[4]   The parties' intent to include BHS's agents within the scope of the Letter Agreement and the arbitration provision is further evidenced by the Indemnification Agreement executed by Respondent which applies to "Brooks, Houghton Securities, Inc., and their affiliates . . . and any directors, officers, agents, advisors and employees of [BHS]" and is explicitly incorporated into the Letter Agreement.   Brown Aff. at Ex. 2. (emphasis supplied).

-11-

theater producer had signed an arbitration agreement. See id. Although the entity's individual

officers were not signatories to the arbitration agreement, the Court of Appeals nevertheless held

they were protected by the arbitration agreement because the misconduct alleged was related to

their conduct as agents of the signatory. See id. at 1056.

Here too, the Individual Petitioners should be afforded the benefit of the arbitration

provision under the Letter Agreement because, as detailed above, there is no question that the

allegations in the NASD proceeding arise directly from the Individual Petitioners' conduct as

agents of BHS in connection with the Letter Agreement. Plainly, the Respondent's NASD

Complaint provides no basis for any individual liability against the Individual Petitioners, nor is

there any suggestion they were at any time acting outside the scope of their duties as employees

of BHS. Indeed, as a corporate entity, BHS "can only act thorough its employees and an

arbitration agreement would be of little value if it did not extend to them." Pritzker, 7 F.3d at

1121.

In short, Respondent's decision to name the Individual Petitioners in their NASD

Proceeding is a simply a litigation tactic intended to avoid the arbitration provision under the

Letter Agreement. If Respondent is permitted to pursue its claim with the NASD it "would be

too easy to circumvent the [arbitration agreement] by naming individuals as defendants". Roby,

996 F.2d at 1360.

### ii.    Respondent Is Estopped from Claiming that the Individual
Petitioners Cannot Compel Arbitration Under the Letter Agreement

Even putting aside the fact that the Individual Petitioners are agents of BHS and thus fall

within the ambit of the parties' arbitration provision in the Letter Agreement, Respondent is

estopped from claiming that it cannot be compelled to arbitrate under the Letter Agreement on

the ground that Petitioners are non-signatories. The law in the Second Circuit provides that

-12-

when a non-signatory seeks to compel a signatory to arbitrate its claims pursuant to an arbitration agreement, the signatory is estopped from avoiding the arbitration "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, 198 F.3d 88, 97 (2d Cir. 1999), cert. denied, 531 U.S. 815 (2000). In determining whether an estoppel exists, the court must determine if the issues to be settled in the arbitration are intertwined with the Letter Agreement. If so, Respondent is estopped from claiming that it cannot be compelled to arbitrate with Petitioners because they are not signatories.

Here, Respondent has adopted the language of tort in an attempt to conceal claims that are clearly related to the terms of the Letter Agreement. As support, Respondent is forced to reference the Letter Agreement and excerpts from the AAA Award. See Brown Aff. at Ex. 10. Because there is no question that the NASD proceeding will require examination and consideration of the Letter Agreement, the matters to be arbitrated in Respondent's NASD proceeding and the Letter Agreement are "inextricably bound". Respondent is therefore estopped from arguing that Petitioners are non-signatories. See Smith/Enron Cogeneration Ltd. P'ship, Inc., 198 F.3d at 97.

For all of these reasons, the Individual Petitioners must be afforded the right to compel arbitration in the AAA.

## II.    This Court Can and Should Dismiss or Stay Respondent's Attempt to Circumvent the Arbitration Provision in the Letter Agreement

Given the circumstances of this case, simply compelling Respondent to abide by its agreement to arbitrate "any and all disputes arising out or related to" the Letter Agreement under the rules of the American Arbitration Association will not afford Petitioners complete relief. Plainly, Petitioners will not be afforded any relief if the improper NASD proceeding goes

-13-

forward.[5]   Therefore, Petitioners respectfully submit that this Court should issue an order staying or dismissing Respondent's continued pursuit of the NASD proceeding.

This Court has the power to proscribe improper arbitration proceedings pursuant to 9 U.S.C. § 4.  See Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co., 643 F. 2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present"); see also L.F. Rothschild & Co. v. Katz, 702 F. Supp. 464, 467 (S.D.N.Y. 1988) (holding that, when confronted with dueling arbitrations, "[t]o allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of [the FAA]") (emphasis in original).

Here, the arbitration provision calls for resolution of any and all disputes arising out of or related to the Letter Agreement under the rules of the American Arbitration Association, not the NASD.  To the extent Respondent claims that the NASD proceeding is subject to a different arbitration agreement, there is no question that the AAA proceeding was filed before the NASD proceeding.  "As a general rule, the forum where an action is first filed takes priority over the forum where a subsequent action arising out of the same facts is filed." L.F. Rothschild, 702 F. Supp. at 467 (enjoining a subsequent arbitration proceeding that would otherwise decide disputes arising from the same facts at issue in the arbitration invoked first in time).  For this reason too, the NASD proceeding should be stayed or dismissed.

---

[5]   Pursuant to the NASD notice, Petitioners must file an answer in the NASD proceeding no later than August 2, 2007.  See Brown Aff. at Ex. 10.

## CONCLUSION

For the foregoing reasons, this Court should enter an order compelling arbitration of

Respondent's claims in the American Arbitration Association, and dismissing or staying the

NASD arbitration improperly instituted by Respondent.

Dated:  New York, NY
      July 10, 2007

                        Kenneth L. Bressler (KB 3398)
                        Thomas H. Belknap, Jr. (TB 3188)
                        Daniel J. Brown (DB 7458)
                        **BLANK ROME LLP**
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, NY  10174
                        (212) 885-5000 *telephone*
                        (212) 885-5002 *facsimile*
                        Attorneys for Petitioners