UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BROOKS, HOUGHTON SECURITIES, INC., :
GERALD HOUGHTON, KEVIN CENTOFANTI,
AND HIROSHI YOSHIDA, :

               Petitioners,   :   07 Civ. 6275 (BSJ)

    -against-   :

LIFE PARTNERS HOLDINGS, INC.   :

              Respondent.   :
------------------------------------------------------------ x

### RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION TO COMPEL ARBITRATION BEFORE THE AAA AND TO STAY OR DISMISS THE NASD ARBITRATION

### PRELIMINARY STATEMENT

Respondent, Life Partners Holdings, Inc. ("Life Partners") has recently filed an arbitration demand with the National Association of Securities Dealers ("NASD") against Petitioners Brooks, Houghton Securities, Inc. ("Brooks, Houghton Securities"), Gerald Houghton ("Houghton"), Kevin Centofanti ("Centofanti") and Hiroshi Yoshida ("Yoshida"), (collectively "Petitioners"), all of whom are NASD members or persons associated with an NASD member. In an effort to avoid appearing before the NASD and the potential disciplinary action they will face in that forum, Petitioners have moved, by order to show cause, to compel Life Partners to arbitrate its claim before the American Arbitration Association ("AAA") instead of the NASD. Petitioners also seek a stay or dismissal of the NASD arbitration.

As a preliminary matter, Petitioners are not entitled to the relief sought because this Court lacks personal jurisdiction over Life Partners. Life Partners, a Texas corporation with its principal place of business in Waco, Texas, transacts no business in New York or anywhere to

NYC:166169.1

supply goods or services in New York; does not solicit or engage in any persistent conduct in the state; has committed no tortious act either within or without the state causing injury to a person or property in New York; and has no real property in this state. Indeed, Petitioners themselves fail to allege any credible basis for personal jurisdiction. Petitioners' contention in their Petition to Compel Arbitration that personal jurisdiction can be based solely on the fact that Life Partners, in October of 2006, appeared before an AAA Arbitration Panel in New York to defend a claim brought against it by Brooks, Houghton & Co. Inc. ("Brooks, Houghton") is clearly insufficient on its face. Without personal jurisdiction over Life Partners, this Court cannot grant Petitioners the preliminary relief they seek and should dismiss the case for lack of personal jurisdiction.

Even if the Court had personal jurisdiction over Life Partners, Petitioners' motion, urging the Court to compel Life Partners to arbitrate its dispute before the AAA, is without merit both factually and legally. Factually, Petitioners' contentions regarding the prior AAA arbitration are incorrect.

First, contrary to Petitioners' allegations, the AAA never rejected Life Partners' claim for attorneys fees—indeed, because Brooks, Houghton would not agree to have the issue of attorneys fees determined by the AAA Arbitration Panel, the Panel never even considered the issue. In addition, contrary to Petitioners' assertions, Life Partners' claim in the NASD Arbitration could not have been asserted in the AAA Arbitration. For one thing, Life Partners' claim, which asserts that the AAA Arbitration was commenced in bad faith and without probable cause, would have been deemed premature at that time. Also, given that part of the relief Life Partners seeks against Petitioners is based on their improper conduct as NASD members, the NASD is the only proper forum for the resolution of the claim. It should be noted too that while Petitioners attempt to argue the merits of Life Partners' claim against them by, among other

things, contending that the claim is barred by the doctrine of res judicata, it is respectfully submitted that the merits of Life Partners' claim are not properly before this Court, but rather are to be determined in arbitration. The only issue before this Court is whether the arbitration should proceed before the NASD or AAA.

Petitioners' motion seeking to compel arbitration before the AAA also lacks legal basis. It warrants emphasizing that Life Partners is indeed willing to arbitrate—it just seeks to arbitrate its dispute before the NASD, as it is legally entitled to do. Unlike the breach of contract claim brought by Brooks, Houghton against Life Partners, Life Partners' claim against Petitioners is not required to be arbitrated before the AAA. Moreover, under the NASD Code of Arbitration Procedure for Customer Disputes (the "Code"), once Life Partners requested arbitration of its claim before the NASD, arbitration before that forum became mandatory and Petitioners' failure to submit to arbitration before the NASD is deemed a violation of the NASD Code.

## FACTUAL BACKGROUND

On March 31, 2004, Brooks, Houghton and Life Partners entered into a contract whereby Brooks, Houghton would act on behalf of Life Partners on a non-exclusive basis for the limited purpose of securing a warehouse line of credit of $75 million. (*See* "Letter Agreement," a copy of which is attached to the Affidavit of Daniel J. Brown ("Brown Aff") in Support of Petitioners Petition to Compel Arbitration as Exhibit 2). The Letter Agreement contained an arbitration provision stating that any controversy arising out of or relating to the agreement would be settled by arbitration under the rules of the AAA. (*See Id.*).

On or about March 21, 2006, Brooks, Houghton commenced an AAA arbitration proceeding, styled *In the Matter of Arbitration between Brooks, Houghton & Co., Inc. and Life*

*Partners Holdings, Inc.*, seeking damages based on an alleged breach of the Letter Agreement by Life Partners. (*See* Affidavit of Arthur D. Felsenfeld ("Felsenfeld Aff.") ¶ 2).

Initially, in the AAA Arbitration neither party sought attorneys fees. Felsenfeld Aff. ¶ 4. However, in its Pre-Hearing Memorandum, Brooks, Houghton requested an award of attorneys fees. (*See* copy of Pre-Hearing Memorandum annexed to the Felsenfeld Aff. as Exhibit A, at pg. 8). As a result of Brooks, Houghton's request for attorneys fees, counsel for Life Partners wrote to counsel for Brooks, Houghton (copying the AAA Arbitration Panel), requesting attorneys fees on behalf of Life Partners. Felsenfeld Aff. ¶ 5. (A copy of this letter, dated October 16, 2006 is annexed to the Felsenfeld Aff. as Exhibit B). In response, counsel for Brooks, Houghton wrote a letter stating that Brooks, Houghton's request for attorneys fees was made in error and was being withdrawn. Felsenfeld Aff. ¶6. (A copy of this letter, dated October 17, 2006 is annexed to the Felsenfeld Aff. as Exhibit C).

At the commencement of the AAA Arbitration hearing on October 23, 2006 (for which there is no transcript), the Panel addressed the issue of whether a claim for attorneys fees would be entertained and the Chairman of the Panel, John Byrne, stated that the Panel would only consider the issue if both parties agreed. Felsenfeld Aff. ¶ 7. Counsel for Brooks, Houghton told the AAA Panel that Brooks, Houghton would not agree to the Panel's consideration of the issue. Felsenfeld Aff. ¶ 7. As a result, the issue of whether either party was entitled to attorneys fees was never considered by the Panel. *Id.*

The AAA Arbitration Panel unanimously denied Brooks, Houghton's breach of contract claim in its entirety by Award dated November 20, 2006. Felsenfeld Aff. ¶2. On April 18, 2007, Life Partners filed a Statement of Claim against the Petitioners with the NASD. A copy of Life Partners' NASD Complaint is attached to the Affidavit of R. Scott Peden ("Peden

Aff.") as Exhibit A. All of the Petitioners are NASD members or persons associated with an NASD member. Peden Aff. ¶ 9. Life Partners' claim against the Petitioners in the NASD Arbitration is based on their breach of fiduciary duties and duties of good faith and fair dealing as members of the NASD. Peden Aff. ¶ 10. In the NASD Arbitration, Life Partners seeks the fees and costs it incurred in defending and prevailing in the AAA arbitration based on the fact that Brooks, Houghton, at Petitioners' wrongful urging, commenced the case against Life Partners in bad faith, without probable cause, and simply to harass Life Partners. *Id.*

## ARGUMENT

### A. THE RELIEF REQUESTED BY PETITIONERS IS BARRED BASED ON THIS COURT'S LACK OF PERSONAL JURISDICTION OVER RESPONDENT

It is well established that the law of the forum state determines the exercise of personal jurisdiction in a diversity case. *See e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. N.Y. 1996); *Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412, *3 (S.D.N.Y. March 12, 2007) (citations omitted). In addition to demonstrating jurisdiction under the law of the forum state, plaintiff must also show that the exercise of jurisdiction satisfies the federal due process requirement. *Id.* "Due process requires that a defendant have enough minimum contacts with the forum state so that [the] maintenance of the suit does not offend traditional notions of fair play and substantial justice." *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1110 (2d Cir. N.Y. 1997), *citing International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945). To be subject to personal jurisdiction, the defendant must have "purposely availed himself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958) (citation omitted).

NYC:166169.1

In New York, personal jurisdiction is determined by reference to New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302. Pursuant to CPLR § 301, a foreign corporation is subject to personal jurisdiction in New York with respect to *any* cause of action if it engages in a "continuous and systematic course of doing business" in the state. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. N.Y. 1983). A foreign corporation that does not engage in continuous and systematic course of business in New York can nonetheless be subject to personal jurisdiction under New York's long arm statute, CPLR § 302, if it transacts business within the state or anywhere to supply goods and services within the state and the cause of action arises from such contacts. *Id.* at 763-64. More specifically, CPLR § 302 provides, in relevant part, that a New York court can exercise personal jurisdiction over a non-domiciliary who: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state; or (3) commits a tortious act without the state that causes injury to a person or property within the state; or (4) owns, uses or possesses any real property situated in the state, if the cause of action arises from any of these enumerated acts.

Here, neither CPLR § 301 nor § 302 can confer personal jurisdiction over Life Partners. Life Partners does not engage in a continuous or systematic course of business in New York and it does not transact any business within, or directed to, New York. *See* Peden Aff. at ¶ 5. Life Partners has not committed any tortious act that could subject it to personal jurisdiction in this state. Peden Aff. at ¶ 6. Nor does Life Partners own or possess any real property located in New York. *Id.* at ¶ 7. Perhaps realizing this much, Petitioners make a single allegation regarding personal jurisdiction over Life Partners, asserting that the "Court has in personam jurisdiction over the Respondent because the Respondent appeared and participated in the AAA

NYC:166169.1

Arbitration proceeding in New York, New York and the present claim relates to the AAA proceeding."[1] *See* Petition to Compel Arbitration ¶ 8. This single allegation falls far short of the strong prima facie showing of personal jurisdiction Petitioners are required to make in order to avoid dismissal. *See Thompson Medical Co. v. National Center of Nutrition, Inc.*, 718 F.Supp. 252, 253 (S.D.N.Y. 1989) (plaintiff seeking preliminary relief must make more than prima facie showing of personal jurisdiction over defendant and personal jurisdiction must be demonstrated by a "preponderance of the evidence"). Moreover, New York law makes clear that this type of limited appearance within the state is insufficient to subject a non-domiciliary to personal jurisdiction. *See e.g. Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F.Supp. 669, 675 (S.D.N.Y. 1989) (holding that personal jurisdiction could not be exercised over defendants where the only relevant contacts alleged were "a mere handful of arbitrations and litigations in New York"); *Canadian Group Underwriters Ins. Co. v. M/V Arctic Trader*, 1998 WL 730334, *3 (S.D.N.Y. Oct. 19, 1998) (same); *Pieczenik v. Cambridge Antibody Technology Group*, 2004 WL 527045, *6 (S.D.N.Y. March 16, 2004) (rejecting plaintiff's argument that personal jurisdiction could be exercised over defendant because defendant was involved in other litigation in New York and holding that "a single agreement giving rise to litigation in New York does not evidence significant contact with New York").

Since Petitioners have not, as they cannot, establish personal jurisdiction over Life Partners, the Court should not grant Petitioners the preliminary relief they seek and should, instead, dismiss this case for lack of personal jurisdiction. *See e.g., Thompson Medical Co., Inc.*,

---

[1] It should be noted that the Letter Agreement provides no provision whereby Life Partners consented to jurisdiction in New York. Petitioners' reference to the Indemnification Agreement between the parties (which is attached to the Letter Agreement and incorporated thereto) is of no significance here since clearly Petitioners have not filed this case seeking indemnification for a claim asserted against them in this Court. Furthermore, the Indemnification Agreement explicitly provides that Life Partners does not admit or acquiesce to personal jurisdiction in New York. (*See* Brown Aff., Ex. 2).

7

718 F.Supp. at 252, 253 (S.D.N.Y. 1989) ("the relief [plaintiff] seeks on its motion, an order staying [defendant's] second-filed Virginia action, is a form of preliminary injunctive relief to which [plaintiff] is not entitled unless it demonstrates in this Court personal jurisdiction over [defendant]") (citation omitted). *See also Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F.Supp.2d 453 (S.D.N.Y. 1999) ("[b]efore entering an order of preliminary injunction, jurisdiction over the defendant must be clearly established"), *citing Weitzman v. Stein,* 897 F.2d 653, 658-59 (2d Cir. 1990) (the district court has no power to grant an injunction against a person over whom it has not acquired jurisdiction).

## B. THE AAA NEVER DECIDED RESPONDENT'S CLAIM WHICH IS NOW BEFORE THE NASD

Petitioners claim that Life Partners is barred by the doctrine of res judicata from seeking attorneys fees in the NASD arbitration because the AAA already denied it this relief. Initially, it warrants re-emphasizing that the merits of Life Partners' claim are not before the Court. Both parties agree that the matter is arbitrable and the only issue before this Court is whether the arbitration is to proceed before the NASD or AAA.

In any event, Life Partners' claim is not barred by the doctrine of res judicata. In order to establish the defense of res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; (3) the claims in subsequent actions were, or could have been raised in the prior action." *LaBranche & Co. v. LaBranche*, 433 F.Supp.2d 372, 378 (S.D.N.Y. 2006) *citing Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. N.Y. 2001). For one thing, contrary to Petitioners' representation, the AAA never rejected Life Partners' claim for attorneys fees. Felsenfeld Aff. ¶ 3. Indeed, the AAA Panel never even considered the issue of attorneys fees because Brooks,

Houghton refused to consent to a determination by the Panel on the issue of attorneys fees. *Id.* at ¶ 7.

Moreover, the claims asserted by Life Partners in the NASD Arbitration could not have been asserted in the AAA Arbitration. Life Partners' claims against the Petitioners in the NASD Arbitration are based on their breach of fiduciary duties and duties of good faith and fair dealing as members of the NASD. Peden Aff. ¶ 10. In the NASD Arbitration, Life Partners seeks the fees and costs it incurred in the AAA arbitration based on the fact that Brooks, Houghton, at Petitioners' wrongful urging, commenced the case against Life Partners in bad faith, without probable cause, and simply to harass Life Partners. *Id.* Life Partners could not have asserted this claim in the AAA Arbitration since such a claim could only be supported if the AAA Panel first agreed that Life Partners was not liable of any wrongdoing alleged by Brooks, Houghton.

In this regard, Life Partners' claim in the NASD Arbitration is analogous to a malicious prosecution claim in a civil case which, by its very nature, cannot be alleged until the case is resolved in favor of the defendant. *See e.g. Scheiner v. New York City Health and Hospitals,* 152 F.Supp.2d 487, 503 (S.D.N.Y. 2001) ("To prevail on a claim of malicious prosecution under New York law, a plaintiff must show: (1) the institution of an action or proceeding by the defendant; (2) begun with malice; (3) the absence of probable cause to support the proceeding; and (4) termination of the proceeding in favor of the plaintiff); *Gastman v. Myer*, 285 A.D. 611, 612, 139 N.Y.S.2d 602, 604 (1st Dep't 1955) (noting that in order to maintain such a claim, the plaintiff must demonstrate termination of the objected-to suit in his favor and that the termination requirement means that "the proceeding [has been] dismissed on the merits or disposed of in such a way that a new proceeding must be commenced if the

prosecution is to be pressed") (citation omitted). In addition, in the NASD Arbitration, Life Partners seeks punitive and exemplary damages against the Petitioners which will only be awarded by the NASD upon a finding of disciplinary violations by Petitioners. Such relief could clearly not have been sought in the AAA arbitration.[2]

For all these reasons, Life Partners is not precluded from arbitrating its claim for attorneys fees and related relief before the NASD.

C. **THE NASD CODE OF ARBITRATION PROCEDURE, BY WHICH PETITIONERS AS NASD MEMBERS ARE BOUND, REQUIRES THAT THEY SUBMIT TO ARBITRATION OF RESPONDENT'S CLAIM BEFORE THE NASD**

Petitioners' contention that Life Partners can be precluded from arbitrating its claim against them before the NASD is contrary to governing law. First, Life Partners is not obligated to arbitrate its claim before the AAA since its claim is clearly collateral to the Letter Agreement. *See e.g. Kurschus v. Painwebber, Inc.*, 1996 WL 39326, *4 (S.D.N.Y. Feb. 1, 1996), *citing Collins & Aikman Prods. Co. v. Building Sys. Inc.*, 58 F.3d 16, 22-23 (2d Cir. N.Y. 1995) (upon noting that "[c]laims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it" are collateral and "beyond the scope of the arbitration agreement", the Court went on to hold that since plaintiff's malicious prosecution, negligence and conspiracy claims presented no questions involving the construction of their contract or their rights under it, these claims were not covered by the arbitration clause contained therein).

---

[2]   It is worth noting too that the AAA Arbitration was commenced by Brooks, Houghton—a non-NASD member. Brooks, Houghton was the only named Claimant in the AAA Arbitration. On the other hand, the NASD Arbitration was brought against Brooks, Houghton Securities and certain of its officers (all of whom are NASD Members) for instigating the commencement of the AAA arbitration. It is against these NASD Members that disciplinary action by the NASD is urged.

NYC:166169.1

Even if Life Partners' claim could be perceived as encompassed by the arbitration clause contained in the Letter Agreement, arbitration before the NASD is nonetheless required. In early 2007, the Securities and Exchange Commission ("SEC") approved the NASD Codes of Arbitration Procedure for Customer and Industry Disputes (hereinafter referred to as the "NASD Code") which, among other things, codified existing practices and implemented several substantive changes. (*See* Notice to Members 07-07, attached the Peden Aff. as Exhibit B). The Code became effective April 16, 2007, and applies to all claims filed on or after that date. (*See Id.*).

Pursuant to Section 12200 of the NASD Code of Arbitration Procedure for Customer Disputes (a copy of Section 12200 is attached to the Peden Aff. as Exhibit C), the dispute filed by Life Partners must be arbitrated before the NASD.[3] Specifically, that Section provides as follows:

> Parties *must* arbitrate a dispute under the Code if:
>
> - Arbitration under the Code is either:
>
>   (1) Required by a written agreement, or
>
>   (2) Requested by the customer;
>
> - The dispute is between a customer and a member or associated person of a member; and
>
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company. (emphasis added)

Here, it cannot be disputed that (1) Life Partners has requested arbitration pursuant to the Code; (2) the dispute is between a customer (Life Partners) and NASD members

---

[3] Prior to April 16, 2007, the Code made such disputes "eligible" for submission to the NASD but did not mandate arbitration under the Code.

11

(Brooks, Houghton Securities Inc. is an NASD Member and Houghton, Centofanti, and Yoshida are persons associated with an NASD Member); and (3) the dispute arises in connection with the business activities of a member. Therefore, Petitioners are bound to arbitrate before the NASD.

In fact, as set forth in the Code's Interpretive Material, Petitioners' failure to arbitrate pursuant to the Code is itself a code violation. Specifically, IM-12000 (a copy of which is annexed to the Peden Aff. as Exhibit D) provides that:

> It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule $2110^4$ for a member or a person associated with a member to:
>
> (a) fail to submit a dispute for arbitration under the NASD Code of Arbitration Procedure ("Code") as required by the Code.

Therefore, pursuant to the Code, the NASD is the proper forum for Life Partners' arbitration. While Petitioners would prefer to avoid appearing before the NASD and favor arbitrating Life Partners' claim before the AAA, the NASD Code, by which Petitioners as NASD Members are bound, requires them to submit to arbitration before the NASD.

---

[4] NASD Conduct Rule 2110, Standards of Commercial Honor and Principles of Trade, provides that: "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."

## CONCLUSION

Based on the foregoing, Respondent Life Partners respectfully requests that the Court enter an order: (1) dismissing this action, (2) denying Petitioners motion in its entirety, (3) awarding Respondent its costs and attorneys fees in defending this motion; and (4) granting Respondent such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 27, 2007

                              ANDREWS KURTH LLP

                              By: _____
                              Arthur D. Felsenfeld (AF3532)
                              Antonette Ruocco (AR7051)
                              450 Lexington Avenue
                              New York, New York 10017
                              (212) 850-2800

                              *Counsel for Life Partners Holdings, Inc.*