# **Exhibit A**

AMERICAN ARBITRATION ASSOCIATION

------------------------------------X
BROOKS, HOUGHTON & COMPANY, INC.

                                                In Re: 13 148 Y 00711 06

             Claimant,

-and-

LIFE PARTNERS HOLDINGS, INC.

             Respondent.
------------------------------------X

## CLAIMANT'S PRE-HEARING MEMORANDUM

### I.    PRELIMINARY STATEMENT

On March 31, 2004, the parties entered into an agreement pursuant to which Claimant Brooks, Houghton & Company, Inc. ("Brooks Houghton") would act as Respondent Life Partners Holdings, Inc.'s ("Life Partners") investment banker in exchange for a fee equal to a percentage of any financing entered into by Life Partners. Brooks Houghton solicited numerous companies to enter into an agreement with Life Partners and obtained two term sheets and a proposal letter from three very respectable companies interested in entering into a financing deal with Life Partners.

Unbeknownst to Brooks Houghton, in May 2005, Life Partners retained another investment bank – FTI Capital Advisors, LLC ("FTI") – to pursue a financing for it, and the two investment banks (Brooks Houghton and FTI) worked on parallel tracks. In fact, discovery has revealed that FTI and Life Partners, behind Brooks Houghton's back, even approached at least one of the companies from which Brooks Houghton had already obtained a term sheet on Life Partners' behalf.

In December 2005, during the time that the agreement between Brooks Houghton and Life Partners was in effect, Life Partners entered into a financing (the "Financing") with a

company named Mammoth Life LLC ("Mammoth"). Brooks Houghton neither found out that Respondent was using a second investment bank nor that it was entering into a Financing until December 28, 2005. The Mammoth Financing closed on December 31, 2005.

There is only one issue in this case: is the financing agreement that Life Partners entered into on December 31, 2005 covered by the parties' March 31, 2004 Letter Agreement (the "Agreement"). Any other issue that Life Partners raises is a red herring:

- The Agreement was in effect at the time of the Financing. In an e-mail dated March 1, 2006, Life Partners' General Counsel admitted that Life Partners had not yet terminated the Agreement. (LP 265).[1] And it cannot be contested that Brooks Houghton was asked to, and in fact continued, to work diligently on Life Partners' behalf up to the time Life Partners entered into the Financing. Indeed, on October 4, 2005, Life Partners' President of Institutional Investments assured Brooks Houghton that Life Partners was still interested in doing a deal "through [Brooks Houghton] with [Sumitomo] or anyone else . . . ." (BHC 82-83).

- While the Agreement states that it is "non-exclusive," it makes it clear that it is only non-exclusive as to companies listed on a schedule to the Agreement – all other "inquiries, indications of interest or offers received by" Life Partners are to be referred to Brooks Houghton. It is uncontested that Life Partners did not list Mammoth on a schedule of companies that are non-exclusive to Brooks Houghton. Furthermore, Life Partners, in breach of the Agreement never advised Brooks Houghton that Life Partners had received the indication of interest from Mammoth. Simply put, Life Partners, in keeping Brooks Houghton in the dark about its

---

[1] "LP" and "BHC" refer to the Bates ranges in Life Partners' and Brooks Houghton's document productions, respectively.

relationship with FTI and its negotiations with Mammoth, was "playing both ends against the middle" in an effort to keep Brooks Houghton as a backstop in case FTI could not find a financing for Life Partners.

- Although Life Partners' and FTI's documents attempt to characterize the Financing as a "warehouse facility," the executed Financing papers entered into between Life Partners and Mammoth clearly provide for Mammoth to invest $45 million of <u>equity</u> into a special purpose vehicle to be owned by Life Partners and Mammoth. That this was an "equity investment" is not only clear from the face of the Financing papers, it was also admitted by Life Partners on January 5, 2006 when it agreed that FTI "earned a $2.7 million fee from the $45.0 million commitment of fresh equity from [Mammoth]." (LP 279).

## II.   STATEMENT OF FACTS AND ARGUMENT

### A.   The Parties

Brooks Houghton is an investment banking firm located in New York, New York, that was established in 1989 and specializes in advising small to mid-cap private and public companies in a broad array of industries in mergers and acquisitions, and the raising of debt and equity capital.

Life Partners is a publicly traded Texas Corporation with its principal place of business in Waco, Texas. Life Partners is engaged in facilitating viatical and life settlement transfers. Viatical and life settlements involve the purchase of the life insurance policies of terminally ill persons (viatical settlements) or elderly persons (life settlements) at a discount to the policies' face value.

B. <u>**The March 31, 2004 Brooks Houghton-Life Partners Letter Agreement**</u>

In March 2004, Life Partners engaged Brooks Houghton to act on behalf of Life Partners as "financial advisor and placement agent" in connection with obtaining a financing. (The Agreement is attached as Exhibit A).

While Brooks Houghton's rights under the Agreement are said to be "non-exclusive," the Agreement makes clear that it is only non-exclusive as to companies listed on a schedule provided by Life Partners and that Life Partners was obligated to promptly refer all inquiries regarding the financing to Brooks Houghton.[2] Specifically, paragraph A(v) of the Agreement states:

> [Life Partners] agrees that all inquiries indications of interest or offers received by [Life Partners] prior to [March 31, 2004] or any time during the period of this Letter Agreement with respect to the Financing, except as agreed upon between [Life Partners] and [Brooks Houghton] for excluded partners or investors, shall be referred promptly to [Brooks Houghton ] and therefore shall be considered applicable to this Letter Agreement during the period of [Brooks Houghton 's] engagement pursuant to this Letter Agreement.

Exhibit A, ¶ A(v).

As noted, Mammoth was not listed by Life Partners as a party that was not exclusive to Brooks Houghton.

Pursuant to paragraph C of the Agreement, the parties agreed that the Agreement

> shall extend for six months. . . and will be extended automatically unless the parties mutually agree otherwise . . . . In addition, to the extent that earnest and on-going discussions and/or negotiations with identified parties regarding the Financing are continuing . . . the Letter Agreement will automatically be extended until Life Partners notifies [Brooks Houghton] upon 30 days written notice that such discussions and/or negotiations have been terminated.

---

[2] Despite requests, Life Partners never provided Brooks Houghton with a schedule of excluded partners or investors.

It is uncontested that Life Partners recognized the validity and enforceability of the Agreement and never sought to terminate the Agreement until March 1, 2006, months after consummating the Mammoth financing and, in fact, continued to ask Brooks Houghton to work on its behalf.

Paragraph B(1) of the Agreement provides that:

> [u]pon the placement of all forms of equity by groups introduced by [Brooks Houghton], including shares of preferred stock, [Brooks Houghton] will be paid a Placement fee of 6.0% of the total value of the placement ... at the closing of a Financing. Id.

The fee structure set forth in paragraph B(1) of the Agreement also reflects Brooks Houghton's broad mandate to seek various financing opportunities for Life Partners. Thus, paragraph B(1) also provides a payment fee of "3.0% of the total value of the placement" for a warehouse facility financing and 5% of the total value upon placement of "subordinated term or convertible debt." Id.

As the Financing involved an equity placement, Life Partners is required to pay the 6.0% fee to Brooks Houghton.

C.  **Brooks Houghton Invested Substantial Time and Effort on Behalf of Life Partners**

Following execution of the Agreement, Brooks Houghton immediately commenced work on behalf of Life Partners. From April 2004 through December 2005, Brooks Houghton solicited the following potential investors on behalf of Life Partners and received term sheets from two:

- Sumitomo Mitsui Bank ("Sumitomo") (term sheet received) (See Ex. B).
- CapitalSource Funds ("CapitalSource") (term sheet received) (See Ex. C).
- Laurus Funds (proposal letter received) (See Ex. D).
- Shinsei Capital Partners

- UCC Capital
- American Capital
- Allied Capital
- Ableco Finance
- Congress Financial
- WestRock Partners
- Societe General, and
- PNC Business

### D. Life Partners Engages FTI Capital Advisors, LLC at the Same Time Brooks Houghton Continues Work on Life Partners' Behalf

On May 9, 2005, Life Partners entered into an engagement letter with FTI whereby FTI agreed to act as Life Partners' "exclusive financial advisor and placement agent." (The May 9, 2005 FTI-Life Partners agreement (the "FTI Agreement") is attached as Exhibit E). Life Partners did not inform Brooks Houghton that it had entered negotiations with FTI or that it had executed a formal engagement letter with FTI until December 28, 2005.

Apparently deciding to suit its own ends and without telling Brooks Houghton that it had entered into an exclusive agreement with FTI, Life Partners continued to work with Brooks Houghton with a view to entering into a financing. For example:

- On May 17, 2005—just one week after engaging FTI—Life Partners attended a follow-up meeting with Brooks Houghton and Sumitomo to continue discussions on a potential deal. (LP 687).
- In June-July 2005, Brooks Houghton followed up with Life Partners with respect to responding to questions posed by Sumitomo. (BHC 659, 65; LP 652; BHC 66).

- In August 2005, Life Partners assured Sumitomo that there was "no problem here as to timing" (BHC 69) and thanked Sumitomo and Brooks Houghton for its hard work, stating that Life Partners is "looking forward to working on the next step." (BHC 72).

- On September 1, 2005, Life Partners provided comments to Brooks Houghton with respect to a revised Sumitomo term sheet. (BHC 75).

- On September 6, 2005, Life Partners authorized Brooks Houghton to forward a revised term sheet proposal to CapitalSource. (BHC 78); and

- On October 4, 2005, Life Partners assured Brooks Houghton that it was still interested in doing a deal "through [Brooks Houghton] with [Sumitomo] or anyone else . . . ." (BHC 82-83).

E.  **The Life Partners-Mammoth Transaction**

In June 2005, Life Partners, through FTI, began negotiating with Mammoth. And on December 31, 2005, Life Partners and Mammoth entered into an agreement pursuant to which Mammoth committed to invest $45 million of equity into a special purpose vehicle to be formed as a limited partnership between Life Partners and Mammoth.

The deal between Life Partners and Mammoth clearly falls under the Agreement, entitling Brooks Houghton to its fee.

First: The Agreement was in effect at the time of the transaction.

Second: Mammoth clearly committed to make a $45 million equity investment.

Third: Life Partners was clearly obligated under the Agreement to refer Mammoth to Brooks Houghton.

Finally: the Agreement clearly states that Brooks Houghton is to be paid a fee based on the total value of the placement and that such fee is to be paid in full at closing. As

acknowledged by Life Partners, the Mammoth financing involved "$45.0 million commitment of fresh equity from [Mammoth]." (LP 279). Pursuant to the Agreement, Brooks Houghton is entitled to a fee of 6.0% of that amount, or $2,700,000.

## CONCLUSION

For the foregoing reasons, an award should be issued in favor of Claimant in the amount of $2,700,000, plus reasonable attorneys' fees and costs.

Dated: October 13, 2006

> BLANK ROME LLP
>
> By: _____
> Kenneth L. Bressler, Esq.
> Daniel J. Brown, Esq.
> The Chrysler Building
> 405 Lexington Avenue
> New York, New York 10174
> **Attorneys for Claimant**

To:   John F. Byrne, Esq.
Peter M. Collins, Esq.
John R. Holsinger, Esq.

Arthur Felsenfeld, Esq.
Holly Schrader, Esq.
**Andrews Kurth LLP**
450 Lexington Avenue, 15th Floor
New York, New York 10017
Attorneys for Respondent