# **Exhibit A**



LIFE PARTNERS INC
A LIFE SETTLEMENT PROVIDER

**RECEIVED**

JUN 0 5 2007

NASD Western Region
Dispute Resolution Office

April 18, 2007

Ms. Judith Hale Norris
NASD Dispute Resolution, Inc.
300 S. Grand Avenue, Suite 900
Los Angeles, CA 90071

RE: Statement of Complaint against:
Brooks, Houghton Securities, Inc. (CRD#: 27514)
444 Madison Ave., 25th floor
New York, NY 10022
Phone: (212) 753-1991

and

Gerald Houghton (CRD# 1564069),
Kevin Centofanti (CRD# 2129735)
and Hiroshi Yoshida (CRD# 339476)

Ladies and Gentlemen:

This complaint arises out of a March 31, 2004 engagement letter with the above-referenced broker/dealer (hereafter "the engagement letter" a copy of which is attached hereto as Ex. 1) to act as a financial advisor and placement agent for Life Partners Holdings, Inc. (hereafter "LPHI"). The language contained within that engagement letter is clear and unambiguous that the engagement was to be on a "non-exclusive basis" for the purpose of arranging a "warehouse facility of $75 million". It is undisputed that no arrangement of any such debt facility was ever consummated.

On February 17, 2006, LPHI received a letter from counsel to Brooks, Houghton asserting that LPHI's announcement of entry into a limited partnership constituted a breach of the engagement letter and demanding payment of a placement fee in connection with the funding of the limited partnership. LPHI responded that it believed that the financial arrangement did not violate the engagement letter (which contemplated only debt and on a non-exclusive placement basis) and, since no work had been performed by Brooks, Houghton, the parties had effectively treated the agreement as having been terminated as of March 1, 2005.

NASD Dispute Resolution, Inc.
April 18, 2007
Page 2 of 4

Notwithstanding this response, the clear language of the agreement and a complete absence of any legal or factual basis to pursue an action in good faith, Brooks, Houghton, by and through the actions and directions of its registered brokers referenced above (collectively referred to throughout as "Brooks, Houghton") proceeded to file a demand for arbitration with the American Arbitration Association seeking damages in the amount of $2.7 million dollars, plus reasonable attorney's fees on March 21, 2006.

On August 28, 2006, counsel for LPHI advised counsel for Brooks, Houghton that the limited partnership agreement which formed the basis for their action had been terminated by mutual agreement (copy of letter attached hereto as Ex. 2) without any financing ever being provided to the partnership. In an effort to reduce the costs of litigation to both sides, LPHI urged Brooks, Houghton to discontinue the arbitration as there was no basis for their claims, either in law or in fact. Despite this clear and convincing evidence that their claims were utterly without merit, Brooks, Houghton continued to pursue arbitration.

Fully aware of the lack of merit of their case as well as the significant adverse monetary impact the prosecution of such an action would have on LPHI (a significantly smaller company), Brooks, Houghton continued to pursue the arbitration to a hearing.

After a full two day hearing and fully consistent with LPHI's position from Brooks, Houghton's initial demand letter, the arbitration panel issued a unanimous decision on November 20, 2006 that Brooks, Houghton take nothing by its claim and found specifically as follows:

> By this Arbitration, Claimant seeks $2.7 million as a "fee" for an alleged financing arranged for Respondent by another investment banking firm. The credible evidence established, however, that: (a) the Agreement, which provided for a non-exclusive relationship between the parties for six (6) months, had expired by its terms before the transaction with Mammoth Life was brought to Respondent by FTI Capital Advisors; (b) the Agreement's "tail" applied to neither the FTI engagement nor the Mammoth transaction; and (c) in any event, the Mammoth transaction complained of was not funded as contemplated by the Agreement between Claimant and Respondent. Moreover, when Claimant purported to resume "work" on Respondent's behalf, at the request of one of Respondent's employees or otherwise, Claimant's insistence on a "revised" engagement letter (which was never executed) belies the claim that the original Agreement was still valid or enforceable.

NASD Dispute Resolution, Inc.
April 18, 2007
Page 3 of 4

(copy of the full award of arbitrators is attached hereto as Ex. 3)

The basis of this complaint is that Brooks, Houghton breached its fiduciary duty of good faith and fair dealing and engaged in unfair business practices with LPHI by:

1. asserting that it was due a placement fee when it knew or should have known that no engagement agreement was in place which would entitle it to a fee; and

2. asserting that it was due a placement fee when it knew or should have known that the transaction upon which the complaint was based was an "equity" transaction, not a debt transaction as contemplated under the engagement letter and thus the "tail" under the engagement letter did not apply to it; and

3. continuing to pursue the demand for arbitration when provided with evidence that the limited partnership transaction was never funded; and

4. abusing the arbitration process by knowingly filing a demand for arbitration without a legal or factual basis in an effort to coerce a settlement from LPHI and forcing LPHI to incur thousands of dollars in costs of defense against its baseless claims.

*This is a separate and distinct complaint from the issues which were the subject of the arbitration action (i.e. a collection action for placement fees which were allegedly owed).* Our complaint is for bad faith and breach of fiduciary duty in *pursuing the arbitration action in the first place* because it had no basis in fact. It is important for the NASD and other potential investment banking clients that this firm and these individuals have a history of making fee assertions without basis and pursuing baseless litigation. We consider this to be vital information with regard to the firm's reputation as well as important when negotiating the terms of an engagement letter or deciding whether to engage them at all. We are a small company with virtually no experience with investment bankers and we feel we were taken advantage of by these NASD members without any meaningful avenue of recourse.

NASD Dispute Resolution, Inc.
April 18, 2007
Page 4 of 4

The total amount of damages incurred by LPHI in its defense against the unwarranted and abusive tactics of Brooks, Houghton including legal fees, arbitration costs and travel expenses is $177,129.53 for which LPHI seeks restitution as well as punitive and exemplary damages in such amount as the panel believes will be sufficient to dissuade Brooks, Houghton and other registered investment advisors from dealing in bad faith with their clients.

If you have any further questions, please feel free to contact me.

Sincerely,

R. Scott Peden
Corporate Secretary/General Counsel