UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROOKS, HOUGHTON SECURITIES, INC.,
GERALD HOUGHTON, KEVIN CENTOFANTI
AND HIROSHI YOSHIDA,

                                 *Petitioners*,          No. 07 CV 6275 (BSJ)

- against-

LIFE PARTNERS HOLDINGS, INC.,

                                 *Respondent.*

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION

                                                      Kenneth L. Bressler (KB 3398)
                                                      Thomas H. Belknap, Jr. (TB 3188)
                                                      Daniel J. Brown (DB 7458)
                                                      ***Blank Rome LLP***
                                                      The Chrysler Building
                                                      405 Lexington Avenue
                                                      New York, New York 10174

                                                      ***Attorneys for Petitioners***

Dated: August 6, 2007

# **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.      Respondent Should Be Compelled to Arbitrate its Claims in the American
           Arbitration Association .................................................................................... 1

          A.    Respondent's Claims for Attorney's Fees Are Directly Related to
                the Letter Agreement and the Prior Arbitration in the AAA ............... 1

          B.    This Court Has Personal Jurisdiction Over Respondent Life
                Partners Holdings, Inc. ....................................................................... 2

    II.     Respondent Cannot Avoid Arbitration in the AAA By Dressing Up its
           Claims to Distance Itself from the Prior Arbitration and the Letter
           Agreement ........................................................................................................ 4

    III.    The NASD Code Does Not Preclude NASD Members and Customers
           from Contracting to Arbitrate Disputes in the American Arbitration
           Association ....................................................................................................... 5

CONCLUSION .......................................................................................................................... 7

## ARGUMENT

I.  **Respondent Should Be Compelled to Arbitrate its Claims in the American Arbitration Association**

Respondent Life Partners Holdings Inc.'s ("Respondent") argument that its NASD claims are not encompassed by the AAA arbitration in the parties' letter agreement dated March 31, 2004 (the "Letter Agreement") are completely without merit.

### A. Respondent's Claims for Attorney's Fees Are Directly Related to the Letter Agreement and the Prior Arbitration in the AAA

As set forth in Petitioners' opening papers (see Petitioners' Opening Br. at p. 8), Respondent's claims in front of the NASD arise directly out of the Letter Agreement and the prior American Arbitration Association proceeding.

Respondent's argument that its claim for attorney's fees is "collateral" to the prior arbitration ignores the fact that consideration of its NASD claims will require a review of the evidentiary record in the AAA proceeding and interpretation of the very same Letter Agreement considered by the AAA. See Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Tradings, Inc., 252 F.3d 218, 224 (2d Cir. 2001) ("[w]here the arbitration clause is broad there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it") (internal quotations and citations omitted).

Respondent does not contest that there is no individual liability against the individual petitioners, Gerald Houghton, Kevin Centofanti and Hiroshi Yoshida (the "Individual Petitioners") who acted as agents of Petitioner Brooks, Houghton Securities, Inc. ("BHS"),

further demonstrating that the NASD claims arise directly from the Letter Agreement between BHS and Respondent, and do not relate to Petitioners' status as NASD members.[1]

### B. This Court Has Personal Jurisdiction Over Respondent Life Partners Holdings, Inc.

In order to establish personal jurisdiction under New York Civil Practice Law and Rules ("CPLR") Section 302(a)(1), "1) [t]he defendant must have transacted business within the state; and 2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006).[2] Contrary to Respondent's argument, it participated in sufficient business activities in New York to subject it to this Court's jurisdiction pursuant to CPLR Section 302(a)(1):

- Respondent's President-Institutional Investor Division traveled to New York on behalf of Respondent on at least seven occasions for business meetings in furtherance of the Letter Agreement. See Declarations of Kevin Centofanti and Hiroshi Yoshida dated August 2, 2007. These contacts are sufficient to confer jurisdiction under CPLR Section 302(a)(1). See Traffix, Inc. v. Herold, 269 F. Supp. 2d 223, 226 (S.D.N.Y. 2003).

- The Letter Agreement was drafted in New York and includes a New York choice of law provision (see Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004) (a New York choice of law clause "is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law")).

- Respondent voluntarily participated in a prior American Arbitration Association proceeding in New York, which has given rise to Petitioners' claim in the instant matter. See Affidavit of Daniel J. Brown, sworn to on July 10, 2007 (the "Brown Aff."), at ¶ 16. See generally Matter of Sayeh R., 91 N.Y.2d 306, 319, 670 N.Y.S.2d 377, 383 (1997) ("Use of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident").

---

[1] Respondent's reliance on Kurschus v. PaineWebber, Inc., 1996 WL 39326, at *4 (S.D.N.Y. Feb. 1, 1996) is misplaced as plaintiff's claim against his former employer for malicious prosecution based on a charge of Attempted Sodomy in the First Degree was "wholly independent of the contract and termination of his employment" at PaineWebber, which was subject to an arbitration provision. Id. at *4

[2] Petitioners note that the Petition alleges personal jurisdiction upon Respondent's voluntary appearance and participation in the prior arbitration proceeding in New York. Nevertheless, Petitioners respectfully submit that personal jurisdiction also exists pursuant to CPLR Section 302(a)(1) and stand ready to file an amended Petition to include such allegations should the Court deem it necessary.

- The Letter Agreement contemplated payments by Respondent to Petitioner in New York (see Hutton v. Priddy's Auction Galleries, Inc., 275 F. Supp. 2d 428, 439 (S.D.N.Y. 2003) (contractual requirement that payments to be sent into the forum state is a factor in assessing whether personal jurisdiction exists)).

These contacts easily fulfill the first requirement of the CPLR.

In determining whether the second prong of the CPLR test is satisfied, courts look to whether there is an "articulable nexus" between the business transacted in New York and the issue being considered by the New York court. McGowan v. Smith, 52 N.Y.2d 268, 273 (1981). Here, Petitioners seek to compel Respondent to abide by the arbitration provision in the Letter Agreement. As all of Respondent's contacts with New York described above concern the Letter Agreement, there is a nexus between Respondent's contacts and the instant dispute.[3]

The cases cited by Respondent for the proposition that its participation in the New York arbitration, standing alone, is insufficient to confer personal jurisdiction over it are inapposite. First, as discussed above, Respondent also transacted business in New York. Second, in all of the cases cited by Respondent, the defendants' participation in other New York litigation or arbitration had no connection to the instant litigation.[4]

For all of these reasons, personal jurisdiction exists over Respondent.

---

[3] Respondent's personal jurisdiction argument also fails because the Peden affidavit concerns an entity called Life Partners, Inc. and not the Respondent here which is Life Partners Holdings, Inc. Thus, Respondent has failed to proffer any relevant evidence to support its personal jurisdiction argument.

[4] In Andros Compania Maritima S.A. v. Interanker Ltd., 714 F. Supp. 669, 672 (S.D.N.Y. 1989), cited by Respondent, the defendant's other New York litigation and arbitration was against third parties and had no connection with plaintiff's lawsuit. Canadian Group Underwriters Ins. Co. v. M/V Arctic Trader, 1998 WL 730334, at *3 (S.D.N.Y. Oct. 19, 1998), also cited by Respondent, stands for the unremarkable proposition that "the existence of agreements to arbitrate potential disputes in New York, falls short of the level of activity required under [CPLR Section 301]" --not Section 302. Similarly, Respondent's citation to Pieczenik v. Cambridge Antibody Technology Group, 2004 WL 527045, at *6 (S.D.N.Y. Mar. 16, 2004) is misplaced because the defendant's other New York litigation was collateral to the dispute at issue and was held insufficient to satisfy the more stringent standard of doing business under CPLR Section 301, whereas here personal jurisdiction is urged under CPLR Section 302(a)(1).

## II. Respondent Cannot Avoid Arbitration in the AAA By Dressing Up its Claims to Distance Itself from the Prior Arbitration and the Letter Agreement

As set forth in Petitioners' opening papers (see Petitioners' Opening Br. at p. 8-9), Respondent's malicious prosecution claim is simply a claim for breach of fiduciary duty and bad faith that falls under the broadly worded arbitration provision in the Letter Agreement. See Chleck v. General Electric Co., 287 F. Supp. 2d 457, 460 (S.D.N.Y. 2003) ("Under the Agreement, the parties expressly agreed to submit all disputes [to arbitration] and plaintiffs cannot escape this term simply by alleging that defendant breached the contract in bad faith").

Respondent does not contest that its NASD claims are arbitrable. Instead, Respondent claims that it could not bring its NASD claims as counterclaims in the AAA proceeding (or in a subsequent AAA proceeding) because such a claim could only be raised after the AAA Panel issued an Award in Respondent's favor.[5] This argument ignores the uncontested fact that Respondent did raise a claim for attorney's fees in the AAA proceeding. Whether the claims were waived at the conclusion of the arbitration, as Mr. Felsenfeld suggests, or whether they were considered by the arbitrators and denied, as Petitioners claim, is of no import because, as discussed below, this is an issue for the AAA arbitrators to decide.[6] In addition, Respondent's NASD complaint alleges claims for breach of fiduciary duty and bad faith, which are not analogous to a claim for malicious prosecution as Respondent argues, particularly where, as here,

---

[5] Respondent's suggestion that exemplary damages could only be recoverable in the NASD proceeding is plainly incorrect. See Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 519 (2d Cir. 1991) (holding that Rule R-43 of the American Arbitration Association Rules offers the presumption of availability of punitive damages).

[6] Moreover, while there is no transcript to corroborate Mr. Felsenfeld's statement that the Panel decided at the "commencement of the AAA Arbitration hearing" that it would not consider Respondent's application for attorney's fees absent Petitioner's consent, even assuming Mr. Felsenfeld's memory is accurate, Respondent still has waived its right to seek attorney's fees because (i) Respondent did not make any application during the hearing for an extension of time to bring a counterclaim to seek attorney's fees (see American Arbitration Association Rule R-6); (ii) Respondent's post-hearing memorandum did not challenge the Panel's alleged decision not to consider the issue of attorney's fees (see Brown Aff. at Ex. 8); (iii) Respondent did not seek to re-open the hearings prior to the issuance of the Award (see American Arbitration Association Rule R-36); and (iv) Respondent failed to seek vacatur of the Award.

Respondent's claims rely upon events *preceding* the issuance of the AAA Award (i.e., Respondent's notice to BHS prior to the AAA hearing that Respondent did not consummate the Mammoth financing deal; see Brown Aff. at Exs. 8, 10). Thus, Respondent could have asserted a counterclaim for breach of fiduciary duty before the issuance of the Award.[7] Further, Respondent offers no explanation for why it could not bring a separate proceeding for breach of fiduciary duty, bad faith or even one for "malicious prosecution" in the AAA as required by the arbitration clause in the Letter Agreement.

And whether Respondent's claim for attorney's fees is barred by the doctrine of *res judicata* is for the AAA, not the NASD to decide. Plainly, the AAA is more familiar with its rules and procedures and, therefore, in a better position to determine the *res judicata* effect of its Award. In addition, Petitioners are willing to stipulate to have the same Panel from the AAA proceeding reconstituted to determine Respondent's claims. Should Respondent prevail on its argument that its claims are not barred by the prior Award, the prior Panel--having heard the evidence submitted in the prior AAA proceeding--is clearly in a far superior position than the NASD to assess the merits of Respondent's claims, which indisputably arise directly from the prior arbitration.

### III. The NASD Code Does Not Preclude NASD Members and Customers from Contracting to Arbitrate Disputes in the American Arbitration Association

Respondent's argument that the NASD Code mandates arbitration in the NASD does not make sense.

First, Respondent points to no provision in the NASD Code that prevents NASD members and customers from contracting to arbitrate their disputes in a forum other than the

---

[7] See Manhattan Motorcars, Inc. v. Automobile Lamborghini, S.p.A., 2007 WL 1988144, at *5 (S.D.N.Y. July 9, 2007) (setting forth elements for bringing a claim for breach of fiduciary duty); see also American Arbitration Association Rule R-6 (after appointment of an arbitrator, a party seeking to assert a new counterclaim must make an application to the Panel).

NASD. Nor can Respondent point to any provision stating that the NASD is the exclusive forum for members to arbitrate disputes with customers. To the contrary, the NASD Code requires NASD members to honor and comply with awards or settlement agreements pursuant to the rules of the American Arbitration Association (and other dispute resolution forums), thus demonstrating that the drafters contemplated that customers and NASD members can contract to resolve their disputes in forums other than the NASD. Specifically, NASD Code IM-12000(d) provides:

> It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2110 for a member or person associated with a member to . . . fail to honor an award, or comply with a written and executed settlement agreement, obtained in connection with an arbitration submitted for disposition . . . pursuant to the rules applicable to the arbitration of disputes before the American Arbitration Association or other dispute resolution forum selected by the parties where timely motion has not been made to vacate or modify such award pursuant to applicable law.

NASD Code IM-12000(d) (emphasis supplied).

Indeed, the NASD does not have subject matter jurisdiction over Respondent's claims because they do not arise from Petitioners' "business activities." NASD Rule 12200. Respondent's claims in the NASD are predicated entirely on allegations that Petitioners baselessly pursued an arbitration against Respondent in the AAA. As Petitioners are all engaged in the investment banking business, not the business of commencing arbitrations, Petitioner's having commenced the prior arbitration is not subject to the NASD rules.[8]

Respondent is clearly forum shopping and seeking to bypass the arbitration provision in the Letter Agreement by bringing an NASD proceeding that includes an NASD member. As

---

[8] Indeed, the AAA proceeding is only the second arbitration brought by BHS in over 15 years. See Centofanti Decl. at ¶ 5.

Respondent does not contest that the Individual Petitioners have no personal liability, there is no reasonable justification for maintaining Respondent's claims in front of the NASD.[9]

## CONCLUSION

For the foregoing reasons and for the reasons stated in Petitioners' opening papers and the accompanying reply declarations of Kevin Centofanti and Hiroshi Yoshida, this Court should enter an order compelling arbitration of Respondent's claims in the American Arbitration Association, and dismissing or staying the NASD arbitration improperly instituted by Respondent.

Dated: New York, New York
      August 6, 2007

By: _____

BLANK ROME LLP
Attorneys for Petitioners

Kenneth L. Bressler (KB 3398)
Thomas H. Belknap, Jr. (TB 3188)
Daniel J. Brown (DB 7458)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000 *telephone*
(212) 885-5002 *facsimile*

---

[9] Respondent's note on page 10 of the opposition memorandum that the AAA proceeding was commenced by Brooks, Houghton & Company, Inc. ("Brooks, Houghton"), a non-NASD member, is irrelevant for three reasons. First, Petitioner Brooks, Houghton Securities, Inc. is the signatory to the Letter Agreement and, therefore, entitled to move to compel arbitration in this dispute. See Brown Aff. at Ex. 2. Second, the Letter Agreement applies to BHS and its "affiliates" (see id.), which includes Brooks, Houghton. Third, if Respondent seeks reimbursement for the attorney's fees and costs it incurred in the AAA proceeding, it should proceed against the Claimant from the prior arbitration--Brooks, Houghton---in the AAA and withdraw the improperly instituted NASD proceeding against Petitioners.