UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BROOKS, HOUGHTON SECURITIES, INC., :
GERALD HOUGHTON, KEVIN CENTOFANTI,
AND HIROSHI YOSHIDA, :

                      Petitioners,        :   07 Civ. 6275 (BSJ)

    -against-                   :

LIFE PARTNERS HOLDINGS, INC.      :

                     Respondent.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONDENT'S SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO PETITIONERS' MOTION TO COMPEL ARBITRATION

### PRELIMINARY STATEMENT

Respondent, Life Partners Holdings, Inc. ("Life Partners" or "Respondent") respectfully submits this Supplemental Memorandum of Law in further opposition to Petitioners' Motion to Compel Arbitration before the AAA and Dismissing or Staying the NASD Arbitration (the "Motion") and, more particularly, directed to Petitioners' allegations regarding personal jurisdiction over Life Partners. As the Court observed during oral argument on the Motion on August 17, 2007, it is undisputed that there is no personal jurisdiction over Life Partners, pursuant to CPLR § 301, because Life Partners does not engage in any continuous or systematic course of business in New York. Accordingly, this brief is directed to the issue of personal jurisdiction pursuant to CPLR § 302, New York's long arm statute.

In the Petition, the sole basis for personal jurisdiction alleged by Petitioners was that the "Respondent appeared and participated in the AAA Arbitration proceeding in New York, New York and the present claim relates to the AAA proceeding." (Petition, ¶ 8). As set forth in detail at page 7 of Life Partners' Memorandum of Law in Opposition to the Motion ("Life

Partners Mem.", incorporated herein by reference), this allegation is clearly insufficient.[1]

Apparently acknowledging this much, Petitioners, for the first time in their reply papers

contended that §302(a)(1) also permits the exercise of personal jurisdiction over Life Partners

because: (1) there were meetings in New York, which Life Partners attended after entering into

the Letter Agreement; (2) the Letter Agreement was drafted in New York and includes a New

York choice of law provision; and (3) the Letter Agreement contemplated payments by Life

Partners to Petitioners in New York.  (*See* Petitioners' Reply Memorandum of Law in further

support of the Motion ("Pet. Reply Mem.") at pg. 2)).  The Court deferred ruling until Life

Partners had an opportunity to address these additional allegations.  For the reasons discussed

below, even if Petitioners' pleading were deemed to include these new allegations they would be

insufficient to establish personal jurisdiction over Life Partners.

## I.    None Of The Personal Jurisdiction Allegations Made By Petitioners Are Sufficient For This Court To Exercise  Personal Jurisdiction Over Life Partners

In order to establish personal jurisdiction pursuant to § 302(a)(1), Petitioners must

establish (1) that Life Partners transacted business in New York and (2) that *the instant claim*

*arises from that business activity.  See Bangladesh Agricultural Dev. Corp. v. Transcontinental*

*Imex, Inc.*, 1982 U.S. Dist. Lexis 9913, *5 (S.D.N.Y. Dec. 23, 1982) ("in order to qualify under

---

[1]    Petitioners' reliance on *Matter of Sayeh*, 91 N.Y.2d 306 (1997) is puzzling since that case is transparently irrelevant to the instant case.  That case dealt with a child protective order proceeding brought by social services under the Family Court Act.  The complaint, in short, alleged that the children's mother neglected them, endangering their well being.  The court held that there was personal jurisdiction over the mother under the Family Court Act because the alleged abuse took place within the state and because the mother had repeatedly invoked the aid of New York courts to enforce Florida court orders in related matters and also had enlisted the use of the New York police department in attempting to enforce visitation rights with her children.  Here, by contrast, Life Partners was the respondent—not a claimant—in a single one day arbitration which took place in New York.  Petitioners' reliance on *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) is also misplaced as that case simply involved a petition to vacate an arbitration award.  Significantly, the court made no determination as to whether the New York contacts satisfied the "transacting business" requirement of  § 302 and remanded that question for determination by the district court.

the "transacting business" clause, the cause of action must arise from the transaction on which jurisdiction is premised"). While Petitioners play lip service to the requirements of § 302 (a)(1) in their reply papers (*see* Pet. Reply Mem., pg. 2), they utterly fail to establish that these requirements are satisfied here.

### a. The Meetings In New York Do Not Establish Personal Jurisdiction Over Life Partners

Petitioners contend that there were at least seven meetings attended by Life Partners' representatives in New York "in furtherance of the Letter Agreement" (Pet. Reply Mem, pg. 2). The meetings Petitioners refer to took place after the Letter Agreement was entered into and were meetings with purported prospective lenders in New York. *(See* Affidavit of R. Soctt Peden, sworn to on August 22, 2007 ("Peden Aff.") at ¶ 3). None of these meetings resulted in any type of business financing to Life Partners. *Id.* Even assuming, *arguendo*, that these meetings constitute "transacting business" in New York for purposes of § 302, personal jurisdiction is nonetheless lacking because the instant claim has nothing at all to do with this purported business activity. The instant claim arises not from any meetings with prospective lenders in New York but from Life Partners' commencement of an NASD arbitration in Houston, Texas. Applicable cases make clear that any appearances in New York are "irrelevant" if the cause of action does not arise out of the appearances which purportedly provide the basis for personal jurisdiction. *Hammond v. Alpha 1 Biomedicals*, Inc., 1992 U.S. Dist Lexis 2421, *15 (N.D.N.Y. Feb. 28, 1992) ("defendant's transaction of business under § 302(a)(1) must be the same transaction that gave rise to plaintiffs' cause of action").[2]

---

[2]    *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981), cited by Petitioners, does not support their position since there the court determined that defendant's trips to New York for marketing research purposes were insufficient to establish personal jurisdiction over them because they did not bear "a substantial relationship" to the action.

For example, in *Hammond v. Alpha 1 Biomedicals*, plaintiffs sued defendants, a pharmaceutical medical research company and its chairman, for fraudulently inducing plaintiffs to purchase and retain the company's stock.  Defendants moved to dismiss for lack of personal jurisdiction and plaintiffs argued, *inter alia*, that the court could exercise personal jurisdiction pursuant to § 302(a)(1) based on three appearances by defendants in New York to promote or sell the company's stock.  In refusing to find personal jurisdiction over defendants, the court noted that none of the appearances in New York formed any part of plaintiffs' claim for fraud and emphasized that this was "clearly evidenced by the fact that plaintiffs' fraud claims would lie even without the allegations of the New York Appearances, and [the] New York Appearances add nothing to plaintiffs' fraud claims." *Id.* at *16.  The Court went on to note that while the New York visits could "conceivably make plaintiffs' fraud argument more persuasive, they [did] not form part of the causes of action" and therefore plaintiffs could not rely on those visits to substantiate their personal jurisdiction argument. *Id.* at *16-17.  Here, even more so than in *Hammond*, Petitioners' claim has nothing to do with any appearances by Life Partners in New York.  As mentioned above, all of the meetings in New York were with prospective lenders, in the hopes of obtaining financing which was never even obtained.  There is absolutely no connection between the meetings that took place in New York and the instant action.  Indeed, as in *Hammond*, the meetings in New York do not form any aspect of Petitioners' claim to compel arbitration before the AAA rather than the NASD and such a claim would lie, if at all, irrespective of whether any meetings with prospective lenders took place in New York.

*Faherty & Faherty, Inc. v. Fender*, 572 F.Supp. 142,146 (S.D.N.Y. 1983) is similarly instructive.  There, defendant had commenced a breach of contract claim in a Texas district court and obtained a default judgment against plaintiffs.  Plaintiffs then commenced an

4

action in the Southern District of New York seeking a declaratory judgment establishing, among other things, that the default judgment rendered against them was void for lack of in personam jurisdiction.   Defendant moved to dismiss the New York action for lack of personal jurisdiction. Plaintiffs claimed that there was jurisdiction over defendant pursuant to § 302(a) and identified "at least seven occasions" where defendant had met with plaintiffs in New York to discuss their business agreements.   Plaintiffs contended that their cause of action stemmed from those agreements which were the subject of the meetings in New York and that, accordingly, the court had jurisdiction under § 302(a).   The court disagreed.   Citing numerous cases, the court emphasized that there must be a substantial relationship between the cause of action and the alleged business activity in the forum and emphasized that "[t]his 'substantial relationship' test is not satisfied by a remote causal connection between defendant's forum activity and plaintiff's claim."   *Id.* at 146-47 (citations omitted).   The court went on to explain that if plaintiff's claim was one for breach of the underlying agreements, the New York contacts may have been sufficient for jurisdictional purposes but since plaintiff's claim was based on defendant's activity in Texas—namely, the commencement of a suit there and the rendering of an allegedly unenforceable judgment there, the New York meetings could not establish jurisdiction over defendant.   The circumstances of this case are remarkably analogous to those in *Faherty*. Petitioners' claim here is based on the commencement by Life Partners of an NASD arbitration in Texas.   The meetings in New York with potential lenders after the Letter Agreement was entered into clearly have no bearing on the instant action, much less give rise to the cause of action in this case, as required under § 302(a).

5

**b. The New York Choice of Law Provision and The Alleged Contemplation of Payments To New York Are Also Insufficient to Establish Personal Jurisdiction Over Life Partners**

Petitioners also claim that personal jurisdiction can be exercised over Life Partners because the Letter Agreement was drafted in New York and contained a New York choice of law provision.[3] The fact that, according to Mr. Centofanti's Reply Declaration (¶ 4) the Letter Agreement was drafted by *Brooks Houghton Securities* in its offices in New York, says nothing about activities on the part of Life Partners in this State. As to the choice of law provision, New York law is well settled that a choice of law provision in a contract "does not constitute a voluntary submission to personal jurisdiction." *McShan v. Omega Louis Brandt et Frere*, S.A., 536 F.2d 516, 518 (2d Cir. 1976). *Sunward Elecs. v. McDonald*, 362 F.3d 17 (2d Cir. 2004), cited by Petitioners, does not suggest otherwise. While the court in *Sunward* did find personal jurisdiction over defendants, it did so based on factors not present in this case. There, defendants entered into a contract which allowed them to sell pet products manufactured by plaintiff. To that end, defendants continuously purchased substantial supplies from plaintiff in New York and also traveled to New York for training provided by plaintiff. Moreover, the action there was for breach of contract, specifically for breach of a non-compete provision. Therefore there, unlike here, the dual requirements of § 302(a)—transacting business activity in New York and a cause of action arising from that business activity, were easily satisfied.

The contention that the contemplation of payments to New York could be sufficient for personal jurisdiction purposes is equally without merit. For one thing, contrary to

---

[3]    As noted in Life Partners Mem., the Letter Agreement provides no provision whereby Life Partners consented to jurisdiction in New York.

6

Mr. Centofanti's Reply Declaration (¶ 4), Section B of the Letter Agreement does not even address where payments are to be made.  In any event, Petitioners' contention in this regard is legally baseless.[4]    For example,  in *Bangladesh Agricultural Development Corp. v. Transcontinental Imex, Inc.*, 1982 U.S. Dist. Lexis 9913 (S.D.N.Y. Dec. 23, 1982), a case involving the shipment of defective grain, the plaintiff argued that personal jurisdiction could be exercised over defendants based on the fact that the underlying agreement between the parties contained a provision for arbitration in New York and required that freight be paid to a New York based firm.  In rejecting plaintiff's arguments the court said that:

> "Even ignoring the seemingly insubstantiality of these contacts, it is evident that jurisdiction cannot be exercised over the defendants because the cause of action does not arise from these transactions. The case does not sound in breach of contract for a violation of the charter party agreements nor for irregularities in the payment arrangements with the [New York] firm.  Rather, plaintiff is seeking to recover for the alleged defective arrival of the grain transported on defendants' ships." *Id.* at *5-6.

Moreover, Life Partners did not and was never required to pay any fees to Brooks, Houghton in New York. (*See* Peden Aff. at ¶ 4).  Finally, the claim here does not arise from any contemplated obligation to make payments in New York, but rather from the commencement by Life Partners of an NASD Arbitration in Texas.

## CONCLUSION

Based on the foregoing, Respondent Life Partners respectfully submits that the Court lacks personal jurisdiction over it and should enter an order: (1) denying Petitioners motion in its entirety; (2)  dismissing this action; (3) awarding Respondent its costs and attorneys

---

[4]    Petitioners' reliance on *Hutton v. Priddy's Auction Galleries*, 275 F.Supp.2d 428 (S.D.N.Y. 2003)  is suspect since the *Hutton* Court examined numerous factors in determining whether personal jurisdiction could be established and ultimately decided it could not.

fees in defending the Motion; and (4) granting Respondent such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 24, 2007

ANDREWS KURTH LLP

By: _____
    Arthur D. Felsenfeld (AF3532)
    Antonette Ruocco (AR7051)
    450 Lexington Avenue
    New York, New York 10017
    (212) 850-2800

*Counsel for Life Partners Holdings, Inc.*

8