# EXHIBIT 1

78G9BROO

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   BROOKS, HOUGHTON SECURITIES,
    INC.,
4
                    Petitioner,
5
            v.                              07 CV 6275 (BSJ)
6
    LIFE PARTNERS HOLDINGS,
7
                    Respondent.
8
    ------------------------------x
9                                       New York, N.Y.
                                        August 17, 2007
10                                      2:00 p.m.

11  Before:

12                     HON. BARBARA S. JONES,

13                                              District Judge

14                         APPEARANCES

15  BLANK ROME LLP
         Attorneys for Petitioner
16  BY:   KENNETH L. BRESSLER
         DANIEL BROWN
17
    ANDREWS KURTH LLP
18       Attorneys for Respondent
    BY:   ARTHUR D. FELSENFELD
19       ANTOINETTE RUOCCO

20

21

22

23

24

25

78G9BROO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BROOKS, HOUGHTON SECURITIES,
INC.,

                    Petitioner,

          v.                                    07 CV 6275 (BSJ)

LIFE PARTNERS HOLDINGS,

                    Respondent.

------------------------------x
                                        New York, N.Y.
                                        August 17, 2007
                                        2:00 p.m.

Before:

                    HON. BARBARA S. JONES,

                                                District Judge

                            APPEARANCES

BLANK ROME LLP
       Attorneys for Petitioner
BY:   KENNETH L. BRESSLER
      DANIEL BROWN

ANDREWS KURTH LLP
       Attorneys for Respondent
BY:   ARTHUR D. FELSENFELD
      ANTOINETTE RUOCCO

1         (Case called)

2         THE COURT:   Good afternoon.   Please be seated.

3         THE DEPUTY CLERK:   Is the petitioner ready?

4         MR. BRESSLER:   Ready, your Honor.

5         THE DEPUTY CLERK:   Counsel, your appearance for the

6    record.

7         MR. BRESSLER:   Kenneth L. Bressler for petitioners.

8         MR. BROWN:   Daniel J. Brown for petitioners.

9         THE DEPUTY CLERK:   Is the respondent ready?

10        MR. FELSENFELD:   We are.

11        THE DEPUTY CLERK:   Counsel, your appearance for the

12   record.

13        MR. FELSENFELD:   Arthur Felsenfeld, Andrews Kurth.

14        MS. RUOCCO:   Antoinette Ruocco, also of Andrews Kurth.

15        THE COURT:   Good afternoon everybody.

16        First of all, could somebody tell me what the status

17   is of the NASD arbitration?

18        MR. FELSENFELD:   We've, in the stipulation, we agree

19   to put off any time to respond on the part of the Brooks

20   Houghton folks until after there's a resolution by this court.

21        THE COURT:   Because I notice we're not here on the day

22   that was originally set in the order to show cause and I didn't

23   know how that adjournment came about.

24        MR. FELSENFELD:   We did file a stipulation with the

25   court that encompassed that agreement.

1          THE COURT:   I guess that's the only thing I don't

2    have.  All right.  Thank you.

3          I'd like to begin with personal jurisdiction, since I

4    think I have to, with respect to this case.  And frankly, it

5    seems to me that the single allegation in the petition which

6    reads, "This Court has jurisdiction over the respondent because

7    the respondent appeared and participated in the AAA proceeding

8    in New York, New York and the present claim relates to the AAA

9    proceeding," I do not believe is enough for personal

10   jurisdiction under CPLR 302.  I think everybody agrees we don't

11   have personal jurisdiction under 301 because it's quite clear

12   here that Life Partners is a Texas corporation, does business

13   there, and doesn't really do any continuous or substantial

14   business in New York.

15         Under these circumstances, I think that Brooks,

16   Houghton should file an amended petition, amended complaint and

17   sufficiently allege facts from which I could find by a

18   preponderance that I have personal jurisdiction, which means I

19   guess I'm dismissing this without prejudice and leave to amend

20   and I don't know how long it will take you.

21         I've read what allegations you would have made had you

22   decided to put them in, in the first instance relating to seven

23   business trips by Life Partners officers, directors into New

24   York apparently involved in negotiations of -- pursuant to the

25   letter agreement.  And I think they may well be enough for me

1   to find personal jurisdiction.  But I don't believe the single

2   allegation in there is sufficient.

3           MR. BRESSLER:  Your Honor, may I make a suggestion

4   perhaps for the purposes of judicial economy and both of our

5   clients?

6           THE COURT:  I'm happy to do that because one of the

7   things that is striking here is that there's a lot of money

8   being spent on litigation.

9           MR. BRESSLER:  Right.  So if we could -- if counsel

10  would consent that we can deem the complaint, the petition

11  amended to include those facts, and we can do it officially if

12  your Honor would prefer, and counsel would prefer, and we can

13  proceed with the other issues.

14          MR. FELSENFELD:  The problem with that approach is

15  that for the first time those allegations were made in the

16  reply papers.

17          THE COURT:  You're quite right.

18          MR. FELSENFELD:  We have not had an opportunity to

19  present to the court the reasons why those allegations, even

20  had they been made, would have been insufficient, including the

21  case law that makes that abundantly clear.

22          THE COURT:  If that's -- you're absolutely right and

23  if you want to challenge it, you have an absolute right to do

24  so.  They submitted a couple affidavits.  You didn't have an

25  opportunity to take a look at that, submit your own affidavits.

1          So I take it you're not agreeing to -- or maybe you're

2     not saying that.  Are you agreeing to me deeming the

3     allegations they've made in their papers as part of the

4     complaint and amendment to the complaint without them having to

5     refile and then giving you time to oppose?  Or do you want --

6     and I will order them to do it -- do you want them to file a

7     new complaint?

8          MR. FELSENFELD:  I would simply want an opportunity to

9     present to the court in written form our objection to

10    jurisdiction based on those allegations.

11         THE COURT:  Well then before we do that, let me ask

12    petitioners here.

13         Are these the only allegations you would add, the ones

14    that you put in your reply papers, together with the affidavits

15    in support?

16         MR. BRESSLER:  That's all we're aware of, your Honor,

17    yes.

18         THE COURT:  How long is it going to take you to

19    object?

20         MR. FELSENFELD:  A week.  Put in papers in a week.

21         THE COURT:  That's fine.  Today is the 17th.

22    24th?

23         MR. FELSENFELD:  That's fine.

24         THE COURT:  And I would just say, and I'm not ruling

25    obviously, that on the face of it, and without having the

 1    benefit of your briefing, it looks as though they have enough

 2    for personal jurisdiction.

 3         MR. FELSENFELD:   I think that there's a fatal

 4    problem --

 5         THE COURT:   Okay.   Fine.

 6         MR. FELSENFELD:   -- with reliance on that for purposes

 7    of long arm jurisdiction.

 8         THE COURT:   Okay.

 9         MR. FELSENFELD:   It's one critical aspect of it that

10    is missing.

11         THE COURT:   I think you have every right to challenge

12    it, and I'll be happy to take a look at the papers.

13         MR. FELSENFELD:   Okay.

14         MR. BRESSLER:   Your Honor, could then we have an

15    opportunity to submit reply papers?

16         THE COURT:   Sure.

17         MR. BRESSLER:   If we could have a week?

18         THE COURT:   31st?

19         MR. BRESSLER:   That's fine.   Thank you, your Honor.

20         In the meantime, since we're here, if we could address

21    the other issues.

22         THE COURT:   Yes, I'd like to talk about the other

23    issues, which I find very interesting, and I have a few

24    questions about too.

25         But why don't I hear from the petitioners first with

1    respect to why I should compel arbitration before the AAA and

2    stay or dismiss the NASD petition.

3          MR. BRESSLER:  I'll be very brief.  We have a very

4    broad arbitration clause here.  It says, "any controversy or

5    claim arising out of or relating to the letter agreement."

6    It's hard to get much broader than that.  Certainly the

7    individuals who were named in the NASD proceeding are covered

8    by the arbitration clause.  The case law makes that clear, etc.

9    And you had a prior arbitration that concerned the very issues

10   that touch upon the request for relief in the NASD.

11         THE COURT:  There is a big dispute about whether the

12   arbitrators ever decided attorneys' fees, right?

13         MR. BRESSLER:  There a distribute, your Honor, and

14   frankly, my recollection is not the same as Mr. Felsenfeld.

15   There's no transcript.  But I will tell you I do not have a

16   crystal clear recollection.  I do not recall that.  But I would

17   not swear exactly what was said.  I just don't recall.

18         MR. FELSENFELD:  I have --

19         THE COURT:  I know, sir.  I'll call on you in a

20   second.

21         Tell me why it is you think it was decided.

22         MR. BRESSLER:  Firstly, because it was an issue.

23         THE COURT:  How was it an issue?

24         MR. BRESSLER:  It was an issue because they made a

25   request for it.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

78G9BROO

```
 1              THE COURT:  Didn't they make a request after you --

 2              MR. BRESSLER:  They did.

 3              THE COURT:  -- made a request?

 4              MR. BRESSLER:  They did.  And then they were awarded

 5    no costs.

 6              THE COURT:  Hold on.  Isn't there an intermediate set

 7    of facts there?

 8              MR. BRESSLER:  There is.  We withdrew our claim.  But

 9    they didn't withdraw theirs.

10              THE COURT:  Right.  And the arbitrator said he'd only

11    proceed if both sides agreed to.

12              MR. BRESSLER:  I do not recall that.

13              THE COURT:  That's the part you don't recall?

14              MR. BRESSLER:  I don't recall that having happened,

15    nor does Mr. Brown.

16              Again, when Mr. Felsenfeld put that in, all I can say

17    is I do not recall that having happened.

18              Putting that aside, whether it happened or not, it

19    still relates -- that's only the res judicata issue.  It still

20    falls under the arbitration provision.  Their claim for --

21              MR. BROWN:  Breach --

22              MR. BRESSLER:  Breach of fiduciary duty and bad faith

23    falls under the arbitration provision because we brought a

24    claim for breach of contract.  They could have -- putting aside

25    res judicata, they could have counterclaimed for those.
```

1        There is no provision in any arbitration code that

2   we've seen that says -- that's equivalent to a malicious

3   prosecution requirement that you have to have an adverse ruling

4   first.   So they could have raised it then.

5        It also would be covered under the arbitration clause

6   because it touches upon the contract that was issued, that's at

7   issue.

8        So if there's going to be a resolution of the claims

9   by Life Partners, they're going to have to interpret the

10  contract and determine whether there was -- the actions we

11  brought to enforce the contract were in bad faith.

12       So I think that, in any event, putting aside the res

13  judicata, it still would be for the AAA to decide, not the

14  NASD.

15       THE COURT:   Let me ask you this question because I'm

16  not that familiar with the NASD rules and I really didn't get

17  that much information from the papers, or at least not enough

18  to help me.

19       What is your obligation and your clients' obligation

20  as a member of the NASD in terms of these rules?

21       MR. BRESSLER:   My understanding is that if a complaint

22  is brought that relates to their business activities as an NASD

23  member, you have to submit to NASD arbitration unless you

24  contract it away.   City rules don't say unless you contract it

25  away, but otherwise --

1         THE COURT:  Is there any law about this?

2         MR. BRESSLER:  We've not seen any.

3         THE COURT:  Any case law?

4         MR. BRESSLER:  I've not seen anything, your Honor.

5    However, they did contract it away.

6         Number two, this doesn't relate to their business.

7    Let's say that Life Partners came to Brooks, Houghton's office

8    and slipped and fell.  Could they bring a NASD proceeding

9    against them?  An NASD member is a person who details in

10   securities.  Enforcing a contract is not an action related to a

11   securities transaction.

12        THE COURT:  Are there any definitions or

13   interpretations of the NASD's which talk about what they mean

14   by business?

15        MR. BRESSLER:  Not that I have seen, your Honor.

16        THE COURT:  No?  Okay.

17        I mean there's a big difference between slipping in

18   the office and pursuing an arbitration claim relating to a

19   placement agreement, I think.  But, I understand the argument

20   that you're making.

21        Anything else?

22        MR. BRESSLER:  That's it.  Thank you, your Honor.

23        THE COURT:  Then let me hear from respondents.

24   Mr. Bressler.

25        MR. BRESSLER:  Yes, your Honor.

78G9BROO

1          THE COURT:  And that's Mr. Felsenfeld.

2          MR. FELSENFELD:  Yes, your Honor.

3          THE COURT:  Go ahead.

4          MR. FELSENFELD:  Moving past the jurisdiction issue,

5     because I believe at the end of the day that's going to be

6     dispositive, on the question of should this case be before the

7     NASD or the AAA, our client has brought the case before the

8     NASD.  The only issue, really, is whether they are precluded

9     from doing so.  The question of whether this case is better

10    suited to be before the AAA, whether AAA is a better forum,

11    more appropriate forum really isn't the issue.

12         Our client, having brought the case before the NASD,

13    is allowed to proceed -- should be allowed to proceed, I should

14    say.

15         THE COURT:  I understand your theory.  But I don't

16    know what supports anything anyone is saying here because I

17    don't have any case law.  I don't have any interpretations of

18    the NASD rules.

19         It seems to me that what you're saying is, look, of

20    course, this is a very broad arbitration clause in this letter

21    agreement, but we're nonetheless also allowed to arbitrate

22    before the NASD for a separate reason.

23         MR. FELSENFELD:  Yes.  And the separate reason is that

24    effective on April 16 of 2007 the NASD adopted a revised code.

25    The revised code makes mandatory for a member or a person

78G9BROO

1    associated with a member, that is Brooks, Houghton Securities

2    or employees, registered employees of Brooks, Houghton

3    Securities, makes it mandatory that if a claim is brought

4    against them relating to their business and at the request of

5    the customer the customer says I want it before the NASD, they

6    are required to submit to NASD arbitration and a refusal to

7    submit to NASD arbitration is itself a code violation.

8              THE COURT:  Okay.

9              MR. FELSENFELD:  And that is --

10             THE COURT:  But what your adversary is saying:  But

11   wait a minute, you've contracted with our client to resolve any

12   disputes, broad arbitration clause, with AAA.  And they say you

13   can contract away or around this -- I guess it's general

14   arbitration rules, and in particular Rule 12200.  And I don't

15   know what the answer is to that.

16             Is there some case law out there, anything in support?

17             MR. FELSENFELD:  First of all, this particular rule,

18   as I said, was adopted April 16.  So prior to that the -- these

19   disputes were just eligible for arbitration.  Now if it were

20   just eligible for arbitration, and most of the case law arose

21   under that, I would have a much more difficult argument.  But

22   because it's mandatory, the picture is entirely different.

23             Now, I think the answer to your Honor's question is

24   the following:  Does the NASD have jurisdiction to handle this

25   case?  I submit the answer is yes.

1          Once they get before an NASD panel, they would then

2     make -- even before the hearing, right after the preliminary

3     conference that you have at the start of every case, they would

4     go to the NASD panel and they would say there is an agreement

5     in existence that while the NASD has jurisdiction pursuant to

6     this new rule, we submit to the panel that because of that

7     agreement, the panel should relinquish jurisdiction and refer

8     the matter to the AAA.

9          It doesn't go to the jurisdiction of the NASD

10    proceeding.  It simply goes to a determination as to whether

11    the panel should defer to the provisions of the contract.

12         Similarly, the question of what the AAA panel ruled

13    with respect to attorneys' fees -- I can tell you -- and I have

14    sworn in an affidavit.  I remember distinctly what happened.

15    And my colleague, who was there, remembers distinctly what

16    happened.  As set forth in my affidavit, after going through

17    some preliminary discussion of the ground rules, I piped up and

18    said:  Well, what about this issue of attorneys' fees?

19         He said -- Mr. Byrne said:  Well, as a matter of fact

20    I was going to raise that.  How about attorneys' fees?  We're

21    not going to consider it, he said, unless both sides agree.

22         In response to that, almost before those words were

23    out of his mouth, Mr. Bressler says:  We don't agree.

24         To which, Mr. Byrne said:  Well, then we're not going

25    to consider it.

 1          But you don't even have to reach that issue.  Why?

 2   Because that goes to the question of res judicata.  And there

 3   is abundant authority -- in fact, I have for your Honor one

 4   such case.  The case is -- it's from the Southern District.

 5   The case is Bishop against Smith Barney.  It's 1998 Westlaw

 6   50210.  And I'll be happy to tender a copy of the decision to

 7   opposing counsel and your Honor.  But that case makes clear

 8   that the issue of res judicata, whether an arbitration is

 9   barred by a prior determination, is a matter for the

10   arbitrators to decide.

11          As to the question of whether --

12          THE COURT:  I, based on my current knowledge, I agree

13   with you.  I'm not too concerned one way or the other with

14   whether or not there is res judicata because I agree, I think

15   that's for an arbitrator to decide.

16          I guess the central question for me -- and you have

17   helped me somewhat here -- is can you -- who has the obligation

18   to conduct what I think you read correctly as a mandatory

19   arbitration provision, when you've also contracted to arbitrate

20   under the AAA.

21          I don't see -- please argue this to me.  I certainly

22   understand the difference between the actual matters dealt with

23   in the arbitration and the claim you're raising now before the

24   NASD.  But, I don't see that the claim you're raising before

25   the NASD isn't something that would also be covered by the AAA

1    laws.

2        MR. FELSENFELD:  I have -- I don't question that.  I

3    think that were it not for the fact that the NASD provides for

4    mandatory arbitration if we ask for it -- and it's mandatory --

5    it's funny how these rules have evolved.  Over the many years,

6    there's been a public outcry that the NASD rules are too sided

7    with the industry.  In fact, I think in the last two weeks

8    Gretchen Morgenstern did a piece in the New York Times about

9    it.  And they're always trying to make it pro customer.  The

10   result is that a customer can insist that a member participate

11   in a NASD arbitration, but it doesn't work the other way

12   around.

13       So if the customer requests that its claim go to the

14   NASD, they are bound, they must participate in the NASD

15   proceeding.  I believe, actually, that even bringing a

16   proceeding to stay or to enjoin an NASD arbitration itself

17   could be violative of the rule.

18       Again, I think that even if this were within the scope

19   of the AAA --

20       THE COURT:  You do raise an interesting question which

21   is, you know, what, if any, authority do I have in that regard?

22       MR. FELSENFELD:  No.  I wouldn't be asking the court

23   for any kind of remedy.  But that's a matter for the NASD to

24   deal with.

25       THE COURT:  No.  No.  No.  I understand that.

1          The whole tension between the mandatory arbitration

2     requirements under the NASD and your more general

3     arbitration -- contractual arbitration agreements is very

4     interesting and there's a tension there, it seems to me.

5          MR. FELSENFELD:   There a tension.   But insofar as a

6     NASD member is concerned, or a person associated with a member,

7     when they become NASD members, they become obligated to comply

8     with bylaws.   And part of the bylaws of the NASD requires them

9     to comply with the NASD code.   The NASD code in turn makes this

10    dispute mandatory before the NASD if a customer requests.   So,

11    it is a contractual obligation of a member to participate in a

12    NASD arbitration.

13         On the question of whether this relates to the

14    business, business activities of an NASD member are not

15    confined to buying and selling securities.   It can encompass a

16    variety of services; underwriting services, financial advisory

17    services, which is exactly what we have here.

18         So, how they can argue that it's not part of their

19    business activities, and yet in the same breath say that for

20    jurisdiction purposes it relates to the letter agreement, I

21    think -- you know, if they were to prevail on their

22    jurisdiction argument, on the basis of the letter agreement,

23    that's fatal to their argument that it's not part of their

24    business activities.   If, conversely, they prevail on the

25    argument that it's not part of their business activities, then

1   they lose the ability to rely on the letter agreement as the

2   linchpin of their jurisdiction argument.

3          I think at the end of the day the court is going to

4   find that there is no jurisdiction here, though.

5          THE COURT:  Any way, you haven't found any bylaws

6   definitions, for instance?  I only got one definition from the

7   bylaws in the papers about what business activities were.

8          I mean I think the issue here is not so much it was --

9   you know, to act as a finance adviser placement, investment

10  banker for placing financing, as it is whether or not taking an

11  arbitration proceeding is a business activity.  And it seems to

12  me certainly businesses sue and arbitrate all the time in

13  furtherance of their business activities.  So I mean left to my

14  own devices, I agree with you.  I think I would find this to be

15  a business activity of the member.

16         Now if anyone wants to give me some more briefing on

17  that I'm happy to get it.  As I say, I'm not ruling because I

18  don't even know yet if I have jurisdiction.  But I guess for

19  the sake of guidance I'm more persuaded with the respondent's

20  arguments about this case falling under the mandatory

21  arbitration provisions, each and every one of those provisions,

22  because it does state that the dispute arises in connection

23  with.  It doesn't even say -- I mean "in connection with" is

24  pretty broad too.  I don't know how going to arbitration for a

25  breach of a contract such as was done here, it wouldn't be in

78G9BROO

1   connection with the business activities of Brooks, Houghton.

2          But, again -- let me ask you a different question that

3   I'm curious about.  What are the remedies available to the

4   NASD?  Are they broader?

5              MR. FELSENFELD:  The remedies that --

6              THE COURT:  Are they different?

7              MR. FELSENFELD:  I could actually lay this out because

8   I'm a NASD arbitrator so I'm somewhat familiar with the

9   process.

10          When the case goes forward before the NASD, the NASD

11   panel -- first of all, there's a lot of latitude to NASD

12   arbitrators.  They can fashion relief, equitable relief that's

13   sometimes not even requested and try to come to an equitable

14   resolution.

15          ·But having said that, assume that the case goes

16   forward before the NASD and they have a hearing, the NASD panel

17   could award monetary relief.

18          An NASD panel could also refer out a matter where they

19   deem that there has been a violation of NASD code of conduct,

20   for example.  And that's referred out to disciplinary

21   proceeding.

22              THE COURT:  Well that's what I'm interested in.

23          Is this a claim of essentially conduct unbecoming a

24   member of the NASD for lack of a better way to put it?

25              In other words, what's the basic claim here?  And is

 1    it different from what would be before the AAA, either because

 2    there's a different remedy or a different standard?

 3              MR. FELSENFELD:  To some extent it is.  I guess -- as

 4    I read the claim -- we are not involved in that case so we

 5    haven't drafted it.  But as I read it, and obviously I've

 6    conferred with my client, but my understanding is that it

 7    involves, how I would describe it is two aspects.

 8              One is a claim that as a result of the conduct my

 9    client suffered monetary relief in terms of expenses in

10    defending the AAA case.

11              But the other aspect of it is that the Brooks,

12    Houghton folks, the petitioners here, violated their

13    obligations as NASD members and violated the code of conduct.

14              THE COURT:  I'm sorry.  Did anyone give me the actual

15    claims?  Was that connected to or attached to --

16              MR. BROWN:  It's Exhibit 10 to our order to show cause

17    in my affidavit.

18              MR. FELSENFELD:  It's also Exhibit A.

19              THE COURT:  I have it.  It's a letter.

20              MR. FELSENFELD:  Often, that's how claims are

21    asserted.  It's also Exhibit A to the Piedent affidavit.

22              THE COURT:  I've read these and I still didn't realize

23    I read the actual -- I guess I'm looking for a charging

24    instrument of some sort.  But it's a claim in the form of a

25    letter.

20

1        MR. BRESSLER:   It would be page 3 below the gold

2    italics sets forth what their claim is.

3        THE COURT:   I'm not going to get into pleading, but it

4    doesn't really say anything about violating the NASD code of

5    conduct, right?

6        MR. FELSENFELD:   I believe elsewhere in the document

7    it does.

8        THE COURT:   It does?   I know I read it in your papers,

9    but I don't know that I have seen it anywhere else.

10       I mean it said breached fiduciary duty of good faith

11   in fair dealing and engaged in unfair business practices.

12       MR. FELSENFELD:   Yes.   That's --

13       THE COURT:   That's on page 3, above the italicized

14   language.

15       MR. FELSENFELD:   Then if you look at the last

16   paragraph on that page, it elaborates on that.

17       THE COURT:   Thank you for focusing me on the actual

18   claims before the NASD.

19       So any way, what you're telling me -- and I knew they

20   could award monetary damages, but you're telling me that

21   potentially they could refer for discipline?

22       MR. FELSENFELD:   Yeah, they make a referral.   They

23   can't do it until the case is over.

24       THE COURT:   Does it need to be requested, or can they

25   do it --

78G9BROO

1    MR. FELSENFELD:  It has nothing to do with a request
2    by a party.

3    Once they finish deliberating and issue an award and
4    the hearings are over, they can sua sponte make a referral.

5    THE COURT:  Okay.

6    I've done nothing but interrupt you.  Is there
7    anything you'd like to --

8    MR. FELSENFELD:  I think answering your questions is a
9    little more important than any prepared remarks.  That's fine.

10    THE COURT:  What have we not covered?

11    MR. FELSENFELD:  I think we basically covered
12    everything.

13    MR. BRESSLER:  Briefly, number one, I believe there is
14    jurisdiction under the FAA, and we cited two similar cases on
15    page 14 of our brief, Société Générale in the First Circuit 81,
16    and L. F. Rothschild, Southern District 88, when there were
17    similar claims.  There was one with the New York Stock Exchange
18    and the exchange in Chicago.  And so I think that there is
19    jurisdiction for your Honor to act under the FAA.

20    THE COURT:  You're not talking -- you're talking about
21    my question about NASD versus more private arbitration.

22    MR. BRESSLER:  Insofar as whether in these
23    circumstances the respondent should be permitted to compel
24    arbitration in the NASD, there's two issues.

25    Number one, of course there doesn't appear to be any

78G9BROO

1    case law whether you can contract it away.  But this is a very

2    different circumstance.  Here you have an arbitration that's

3    already taken place, concerning issues that certainly are

4    touching upon, if not directly related to what they're seeking

5    here.  So effectively, they are forum shopping.

6          You have a general policy to have one arbitration,

7    deal with the issues, and not then six months later, nine

8    months later bring another one in another forum.

9          They could have brought a counterclaim for malicious

10   prosecution, for bad faith, for fiduciary duty, whatever they

11   wanted to, but they didn't.

12         So I don't know that these facts are going to be

13   similar to other situations with NASD code where you're going

14   to have perhaps before the mandatory provisions were set you'd

15   have a contract between a broker and a customer and something

16   would happen, or no arbitration took place.

17         Here an actual arbitration took place before these

18   rules came out.  And now they're trying to take advantage of

19   the mandatory rules instead of going -- as a second bite at the

20   apple.  Even if they didn't seek attorneys' fees, they could

21   have made these exact same claims as a counterclaim in the AAA;

22   bad faith and breach of fiduciary duty.

23         So I think it's very -- as I said, it's interesting,

24   and it's a very different situation than one would normally

25   face.  And I don't really see that pursuing arbitration to

1  enforce a contract is what the NASD rules are about in seeking

2  to refer against a sophisticated public company. We are

3  talking, respondent is a publicly traded company, not an

4  individual 80-year-old retiree. And I don't think that's what

5  this is all about.

6          THE COURT:  Okay.

7          MR. FELSENFELD:  May I just briefly respond?

8          THE COURT:  Yes, of course.

9          MR. FELSENFELD:  In terms of forum shopping, the AAA

10  panel found in Life Partners' favor. And as I make clear in my

11  affidavit, none of which has been refuted, the panel determined

12  at the beginning that it wasn't going to consider attorneys'

13  fees.

14          But beyond that, that's an argument that could be made

15  to the arbitrators. They can tell the arbitrators:  Wait,

16  don't go forward. We've had this matter. It's barred by res

17  judicata. And the panel should dismiss the case. That's an

18  argument that they should address to the NASD panel.

19          MR. BRESSLER:  Your Honor, if I may, just one last

20  point. The arbitrators did not award costs. And if there was

21  something so wrong with our having brought that, they could

22  have awarded costs. They asked for costs. Respondents asked

23  for costs in the arbitration. They weren't awarded costs. So

24  while it's not exactly the same as attorneys' fees, they didn't

25  get it.

```
 1              THE COURT:  What I'd like to do, recognizing we have a
 2    briefing schedule with respect to the jurisdiction, is:  One,
 3    talk to everybody in the robing room for a few minutes if you
 4    have some time; and two, in addition to the jurisdictional
 5    issue -- and you may want to wait until after I decide that,
 6    which I will do very promptly -- I would like any authority at
 7    all with respect to this new mandatory provision.  And I
 8    recognize you may not find anything on it because it's only
 9    been since April, but on the questions in general.
10              MR. BRESSLER:  Thank you.
11              MR. FELSENFELD:  Thank you, your Honor.
12              THE COURT:  So, again, if you have the time, I'd like
13    to chat with counsel in the robing room.
14              I'm sorry.  There was one other thing.  Am I correct
15    that the letter agreement does not have the attorneys' fees
16    provision?
17              MR. BRESSLER:  Correct.
18              MR. FELSENFELD:  Yes.
19              THE COURT:  The letter agreement itself?
20              MR. FELSENFELD:  Correct.
21              (Adjourned)
22
23
24
25
```